E-filing 



Anurag Tiwari
2250 Monroe Av. # 129
Santa Clara, California, 95050
Phone: 408-394-5253
Fax: 208-988-5015
Email: anuragtiwari1983@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

---

Anurag Tiwari,    )

    )

    Plaintiff in pro per,   )

    )

vs.    )    Case No.: **C08  03988**

    )    **EMC**

NBC Universal, INC.    )

30 Rockefeller Plaza    )    COMPLAINT

New York, New York, 10112   )

    )    DEMAND FOR JURY TRIAL

    Defendant.    )

---

### THE PARTIES

1. The plaintiff, Dr. Anurag Tiwari, is an individual residing in Santa Clara, California.

2. The defendant, NBC UNIVERSAL, INC. ("NBC"), is a corporation headquartered in New York.

### JURISDICTION AND VENUE

3. The defendant, NBC UNIVERSAL, INC. ("NBC"), is a corporation incorporated in Delaware and headquartered in New York. At all relevant times the defendant had offices in and was doing substantial business in this judicial district.

4. The plaintiff, Anurag Tiwari, is a resident of Santa Clara, California and is a citizen of India.

5. The court has jurisdiction of this action pursuant to section 28 U.S.C § 1332(a)(2) as there exists diversity of citizenship between the plaintiff and the defendant and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs. The court also has jurisdiction because subject matter of this action is based on federal question, 28 U.S.C § 1331.

6. Venue is proper in this judicial district pursuant to 28 U.S.C § 1391because a substantial part of the events or omissions which give rise to the claim occurred in this judicial district.

## INTRADISTRIC ASSIGNMENT

7. Assignment to the San Francisco division is appropriate because the majority of claims, events, and acts alleged below occurred within the Northern District of California including the County of Sonoma, California.

## ALLEGATION COMMON TO ALL CAUSES OF ACTION

8. The acts and omissions stated in this complaint were known to the defendant at all relevant times and were performed on behalf of the defendant.

9. The acts and omissions stated in this complaint were performed by the defendant's employees, cameramen, consultants, agents, representatives, and by the local law enforcement officials for the defendant.

10. The plaintiff, Anurag Tiwari, is a computer engineer with master's and doctorate degrees in computer science and engineering. Dr. Tiwari has been working and leading a law abiding life in the USA for eight years, having no criminal history and has never been arrested prior to or after the events mentioned in this complaint.

11. Dr. Tiwari was working as an architect of microprocessor design tools in a leading microprocessor and server manufacturing company at the time of his arrest. Dr. Tiwari has authored several research papers in journals and conferences in his research area and has contributed his research work in the field of Integrated Circuits (IC) by working on federal government and industry projects.

12. The defendant, NBC, engages in the business of collecting and broadcasting news and at all relevant times the defendant has been regularly broadcasting a news-magazine called Dateline.

13. In the fall of 2004, the defendant started broadcasting a Dateline segment named "To Catch a Predator", the focal point of which is public humiliation of the individuals who are shown on the segment. To create the show, the defendant retains the services of a corporation called "Perverted-Justice", which the defendant says is indispensable to the show.

14. Perverted-Justice employees create several user profiles on yahoo.com web-site in which they mention that the user is an adult. Perverted-Justice employees post the photos of unknown females on the profile, subsequently posing as adults, they enter the regional yahoo.com chat rooms which are restricted to adults and engage in conversation with adult men. At some point during the conversation Perverted-Justice employees mention that they are minors and finally lure the men to a "sting house" for a meeting.

15. At the sting house, a decoy greets the men into the house and soon after a Dateline host comes out to confront the men and starts reading details from a chat

log. On their way out of the house, the men are arrested by the police. Typically in almost every show there are more than half a dozen police officers present with their guns drawn to arrest a single man. Police officers force the men to the wall or to the floor before handcuffing them. The men are taken then to a booking area where they are interviewed and then transported to the county jail.

16. All of the above events – arriving at the house, the scene inside the house, arrest by the police, arrival to the booking area and interrogation by a police officer are recorded. This is then edited and aired as part of the show.

17. One of the essential elements for the defendant to conduct and film these stings is to get cooperation from the local law enforcement officials. On information and belief, the defendant achieves this by using Perverted-Justice employees who troll the nation for small town law enforcement officials who will cooperate and collude with the defendant to make another episode of To Catch a Predator in their city.

18. On information and belief, the defendant provides money, services, audio/video equipment, air-time, and other things of value to the law enforcement officials in exchange of favors to produce To Catch a Predator show. The law enforcement officials, in return, provide highly dramatized and staged arrests, staged interrogations and let the defendant control every aspect of the sting operation.

19. Another important element to make the show is to lure adult men to the sting house, the task which the defendant relegates to Perverted-Justice employees. Perverted-Justice employees badger, coax and cajole the individuals they have targeted in the chat rooms to lure them to the sting house. They zone-in on the

targeted individual by adding him into their "buddy list" to continue an ongoing conversation. If an individual gives out his phone number, Perverted-Justice employee repeatedly call the individual and beg him to come to the sting house. Perverted-Justice employees appeal to the individual's sympathy and urge him to come to the sting house. The defendant conceals such conduct of Perverted-Justice employees and does not show it on the show leaving its viewers with false impressions.

20. Perverted-Justice employees alter and edit chat-log/email records, phone call recordings and do not submit complete record to law enforcement.

21. In return for their services, Perverted-Justice employees are handsomely rewarded. For each hour of To Catch a Predator show produced in 2006, Perverted-Justice received USD 75,000 by the defendant and the revenue of USD 825,000 generated by Perverted-Justice in the year 2006 was based solely on the payment received from the defendant to produce eleven episodes of To Catch a Predator show.

22. Dateline host Chris Hansen has stated publicly that the defendant conducts a "parallel investigation" with law enforcement and that Perverted-Justice is a "Chinese wall" between the defendant and law enforcement. The statement is false, and it gives public a false impression that the defendant has no influence over law enforcement.

23. The defendant unethically colludes with the local law enforcement officials by concealing police misconduct. Complete unedited video footage of the sting operation is not submitted by the police department for examination by the

defense counsel. The defendant does not provide original footage and does not provide identities of cameramen who can authenticate the recordings. Furthermore, on information and belief, the defendant provides pre-formatted documents to aid law enforcement in search warrant affidavit and arrest report preparation.

24. The defendant, because of the forgoing, and being an integral part of the sting operation, has been manufacturing news and was not merely reporting it. The defendant as a result, failed to act ethically, violated numerous journalistic standards and was advocating a cause instead of examining it as a neutral observer.

25. On August 25, 2006, the defendant conducted a sting operation with the cooperation of the Petaluma Police Department in Petaluma, California. The defendant, with the help of a Petaluma police officer, located and rented a house to make yet another episode of To Catch a Predator. The defendant setup hidden cameras and hidden microphones in the entire house and on the residential street to capture the video of arriving individuals. The sting house did not have a mailbox so the defendant put a mailbox in front of the house and installed a hidden camera in it. The video from multiple cameras was recorded and observed by the defendant's personnel present in the house.

26. The Petaluma Police Department's arrest team was staked out in the garage of the adjacent house hidden from the arriving individuals. The live video and audio from the defendant's hidden cameras and microphones was also monitored by the

arrest team through TV monitors setup by the Petaluma Police Department
officers a day before the operation.

27. For the sting operation, Petaluma police officials constructed a makeshift "pre-booking" area at the Petaluma airport. At the pre-booking area, arrested individuals were searched and asked to give identifying information. The defendant's cameramen were present at the pre-booking area to film the arrested individuals. Also present at the pre-booking area was an enclosed motor-home which was setup with the defendant's hidden cameras and microphones and was used to interrogate arrestees. On information and belief, the motor-homes at pre-booking area were property of Petaluma Police Department.

28. On August 25, 2006, the plaintiff went to the sting house. However, upon reaching the sting house he decided not to go into the house and turned back. The defendant's personnel hiding inside the house observed that through their hidden cameras and instructed the decoy to call the plaintiff on his cell-phone and to urge him to come into the house. After the phone call conversation, the plaintiff went into the house and was then confronted by Dateline host.

29. Upon exiting the house, the plaintiff was arrested by approximately half a dozen police officers who had their guns drawn and pointed at the plaintiff. The plaintiff was subsequently forced to the wall, handcuffed and transported to the pre-booking area. All of these events were recorded by the defendant. On information and belief, the arrest team was asked to wear personal recoding devices and the recordings were later shared with the defendant to make the TV show with dramatic arrest footage.

30. After the plaintiff's arrest, chat-log records were given to the arrest team by an employee of Perverted-Justice who was present at the house. On information and belief, the police officers of the arrest team and the arresting officer at the pre-booking area did not look at the chat-log records until after the plaintiff was arrested. The arresting officer, before arresting the plaintiff, did not know the identity of the Perverted-Justice decoys and did not confirm if the chat-log records provided were accurate and complete. On information and belief, the phone call recordings or transcripts of the recordings were not provided to the police officer.

31. The plaintiff was charged with two felony counts after his arrest, on September 19, 2006, the plaintiff was arraigned on one of the two felony charges and the other felony charge was dismissed by the district attorney of Sonoma County, California. On October 6, 2006, the defendant broadcast To Catch a Predator show featuring the plaintiff in it. On December 21, 2007, the district attorney of Sonoma County dismissed the second felony charge and filed amended information charging the plaintiff with a misdemeanor based on the identical evidence that gave rise to the original felony charge. The plaintiff's misdemeanor case is pending in Sonoma County Superior Court.

32. In addition to Petaluma, California, the defendant has produced To Catch a Predator show in other places including Mira Loma and Long Beach, California, Greenville, Ohio, Murphy, Texas, Fort Myers and Flagler Beach, Florida, Fortson, Georgia, and Ocean County, New Jersey.

## FIRST CAUSE OF ACTION
## CIVIL RIGHTS VIOLATION
## Pursuant to 42 U.S.C § 1983

33. The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and
every previous allegation.

34. The defendant, a corporate media giant, was in a position of power to manipulate
and influence the law enforcement officials to deviate them from prudent police
practices. The defendant abused its power by overly intruding into a law
enforcement operation to gather dramatic footage for commercial programming.
The defendant planned, executed, and conducted the entire sting operation and
acted as private law enforcement.

35. The defendant, without an inextricable involvement with law enforcement in
planning and execution of the operation, would have been unable to record the
plaintiff's sound, video, private facts and confidential information. Likewise, the
defendant would have been unable to record the plaintiff's dramatically staged
arrest without an inextricable involvement between the defendant and law
enforcement.

36. The defendant's personnel gathered all the evidence for this operation, which
cannot be independently verified by the law enforcement officials. The law
enforcement officials were present merely to arrest the arriving individuals upon
getting directions from the defendant's personnel.

37. The sting operation was jointly planned and executed by the law enforcement
officials and the defendant. Portions of the planning were memorialized by a
written operation order so that the officials could assist the defendant in obtaining

material for its commercial programming. The following is quoted verbatim from the operation order (Online Predator Operation) written by a lieutenant of the Petaluma Police Department who was also the chief architect of the operation:

a. "Law Enforcement personnel will not enter the residence ..."

b. "Assigned personnel will continuously maintain surveillance until the suspect enters the residence wherein the suspect will then meet with NBC Dateline personnel who will attempt to talk to the suspect about his intentions."

c. "Arrest team will have live video and audio contact with the inside of the target house. They will receive direct notice from personnel in the house that the suspect is leaving."

d. "Monitoring NBC conversations with offenders and noting appropriate details" (instruction for the arresting officers present at the pre-booking area).

38. Shortly after the Petaluma law enforcement operation, the aforementioned lieutenant was offered a seat on the Perverted-Justice board of directors which consists of employees of Perverted-Justice, and an NBC hidden cameraman. The aforementioned lieutenant later accepted the offer.

39. The police officers used excessive force to arrest the plaintiff. The police officers who were constantly monitoring the plaintiff's live video did not have a reason to believe that the plaintiff was armed or that the plaintiff would resist arrest.

Approximately half a dozen police officers had their guns pointed at the plaintiff during his arrest. The plaintiff was ordered to put his hands up in the air and face a wall, after which he was forced to the wall and was then handcuffed. The police officers used excessive force solely to sensationalize and augment the entertainment value of the arrest.

40. The plaintiff, with his hands cuffed tightly behind his back, was filmed in a posture connotating guilt. He was made to sit for hours at the makeshift pre-booking area only to have the defendant gather more dramatic and sensational footage of his miserable condition. The events took place on and about midnight of August 25, 2006, in an open area. On that cold night, with temperature in high 40s or low 50s, the plaintiff, who was not wearing any warm cloths started shivering and shaking after sitting in an open space for a long time. The defendant captured the plaintiff's images in such a humiliating condition, edited those images, depicting fear rather than cold and has been disseminating them repeatedly during the last two years.

41. The plaintiff was handcuffed for a period greater than approximately two hours because of which he sustained bruises and stains, and suffered pain and discomfort. In addition, the plaintiff was subjected to the glare of bright lights used by the defendant's cameramen. The plaintiff was subjected to extended exposure to cold, unnecessary pain, thirst, glare of bright lights and humiliation without any law enforcement justification.

42. In another incident, the plaintiff was ordered to move and sit near an open door of the motor-home so that defendant's cameramen could get a close-up view of the

plaintiff from a better angle. On information and belief, police officials were instructed by the defendant to keep arrested individuals handcuffed at all times so that they cannot cover their face.

43. The defendant, with the aid and cooperation of law enforcement, transformed the pre-booking area into a stage on which the plaintiff was an object to be filmed for the entertainment of the defendant's audience.

44. The plaintiff's personal information, such as his social security number, date of birth, driver's license number, home address, home phone number, employer's name and address, was asked by the police officers present at the pre-booking area and was recorded by the defendant's cameramen.

45. At the pre-booking area, an enclosed motor-home was used for interrogation. The motor-home was fitted with two hidden cameras prior to the commencement of the operation. Inside the motor-home, the plaintiff was ordered to sit on a specified seat which was facing the hidden cameras. The plaintiff at the beginning of the interrogation invoked his right against self incrimination by stating that he wants to talk to a lawyer. Upon plaintiff's request, the police officer initially stopped the interrogation, and later intimidated, pressured and tricked the plaintiff to answer his questions. During an hour long interrogation the police officer asked plaintiff several personal questions which were secretly recorded and were later edited and broadcast by the defendant.

46. During the interrogation, the police officer knowing full well that the interrogation is being recorded, taunted the plaintiff by calling him a sexual predator a number of times. Upon plaintiff's objection, the police officer asserted

that "Twelve citizens of Sonoma County will say that you are a sexual predator".
The police officer further commented that "This is NBC, it will be shown on
national TV, what will your employer do when they see it?".

47. The plaintiff's statements elicited by the coercive conduct of the interrogating
police officer were used against him during his preliminary hearing. Furthermore,
the defendant edited the interrogation video to harass the plaintiff by luridly
showing him in a humiliating condition. The defendant concealed the fact that the
plaintiff requested a lawyer, a request which was disregarded by the police officer
and that the plaintiff's constitutional rights were violated.

48. The arresting police officer presented inaccurate information in the search warrant
affidavit and the police report. The search warrant was then executed to search
and seize plaintiff's property from his residence.

49. Before the airing of To Catch a Predator show on October 6, 2006, the plaintiff
was gainfully employed, had a successful career, was highly regarded by his peers
and employer, and had a tremendous opportunity to grow in his career with future
economic benefits. On October 9, 2006, the weekend after the broadcast, the
plaintiff was put on administrative leave by his employer and was forced to resign
shortly thereafter.

50. The defendant recorded approximately two hours of the plaintiff's footage, edited
it, and disseminated it for millions to see. Over the last two years, the defendant
has been broadcasting the plaintiff's sound and images through its internet web-
site and through several national and international TV channels.

51. Because of the foregoing allegations, the defendant acted under color of the State of California and deprived the plaintiff of his liberty and property without the due process of law. The plaintiff, because of the defendant's actions was subjected to unreasonable search and seizure and the defendant unreasonably intruded upon the plaintiff's privacy. The defendant subjected the plaintiff to cruel and unusual pre-trial punishment and compelled the plaintiff to be a witness against himself in a criminal case.

52. Because of the foregoing allegations, the plaintiff's rights under the fourth, fifth, eighth and fourteenth amendments to the constitution of the United States of America were violated. In addition, the plaintiff was deprived of the substantive due process under the fourteenth amendment.

53. The plaintiff, because of the forgoing, has suffered pain and discomfort, emotional distress, anger, mental anguish, anxiety, humiliation, fear and uncertainty, and a feeling of helplessness. Furthermore, as a result of the defendant's actions, the plaintiff lost his job, a successful career, and suffered economic damages and has been subjected to public ridicule. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

54. The plaintiff never consented or authorized the defendant to edit, broadcast and exploit the footage and never wanted the footage to be made public.

55. The plaintiff suffered further emotional distress upon finding out that the defendant had commercially exploited the footage.

56. In doing the foregoing acts, the defendant acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the plaintiff

## SECOND CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### Pursuant to the Laws of the State of California

57. The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

58. In making of To Catch a Predator show, the defendant violated journalistic integrity and numerous journalistic principles. For example, Society of Professional Journalists (SPJ) code of ethics (http://www.spj.org/ethicscode.asp) states that journalists should:

   a. "Avoid misleading re-enactments or staged news events."

   b. "Avoid undercover or other surreptitious methods ..."

   c. "Distinguish between advocacy and news reporting. Analysis and commentary should be labeled and not misrepresent fact or context."

   d. "Show good taste. Avoid pandering to lurid curiosity."

   e. "Recognize that gathering and reporting information may cause harm or discomfort."

   f. "Avoid conflicts of interest, real or perceived."

   g. "Be wary of sources offering information for favors or money."

59. The defendant violated all of the above standards to make an entertainment show.

60. The defendant abused its power of being a media giant and its power to disseminate information by influencing Petaluma police officials, by paying Perverted-Justice, by manufacturing news and by surreptitiously recording the

plaintiff's sound and video for its benefit. The defendant's conduct of influencing Petaluma police officials to violate plaintiff's rights, invading plaintiff's privacy, broadcasting plaintiff's sound and images, broadcasting plaintiff's private facts only to create a shocking TV show for its financial gain is outrageous. Further, the defendant's conduct of deceiving the plaintiff by concealing the fact that he was being surreptitiously recorded and repeated broadcast of the plaintiff's sound and visual images for its financial gain is outrageous.

61. The defendant used its powers to push the law enforcement officials to deviate them from prudent police practices and converted them into TV actors. The defendant, armed with the powers of press which were greatly enhanced by cooperating law enforcement, was in a supreme position to control each and every aspect of the law enforcement operation. For example, on information and belief, the police officers were asked by the defendant to keep the plaintiff handcuffed at all times so that he could not cover his face. Likewise, the police officers moved the plaintiff in front of dateline cameras to facilitate video recording.

62. The plaintiff, on a cold autumn night with his hands cuffed behind his back was compelled to sit in front of dateline cameras and glaring bright lights for a long time. The footage with the plaintiff in such humiliating situation has been repeatedly aired and is available for public viewing on the defendant's internet web-site.

63. The plaintiff at no time wanted his sound and visual images to be recorded and be shown to the millions. The plaintiff was helpless and vulnerable and the defendant took advantage of the plaintiff's situation.

64. The defendant, knowing that the plaintiff had a good reputation, and is a law abiding citizen was eager to commercially exploit the footage to create a deeply shocking show to attract more viewers. The defendant intended to inflict emotional distress or acted in reckless disregard of the likelihood of inflicting emotional distress in the plaintiff. The defendant's conduct of directing law enforcement officials to subject the plaintiff to pain and discomfort, to mislead the plaintiff by misrepresenting and concealing the truth and to unjustly profit from him was extremely outrageous.

65. As a result of the foregoing acts, the defendant's conduct was extremely outrageous and exceeded all possible bounds of decency.

66. The plaintiff, as a result of the defendant's outrageous conduct has been subjected to pain and discomfort, severe emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and uncertainty, and a feeling of helplessness. In particular, the plaintiff was helpless and was unable to do anything to stop the defendant from filming him in a humiliating situation and to stop the defendant from broadcasting his images. Furthermore, as a result of the defendant's actions, the plaintiff lost his job, a successful career and suffered economic damages. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

67. The plaintiff never consented or authorized the defendant to edit, broadcast and exploit the aforementioned recording and never wanted it to be made public.

68. In doing the foregoing acts, the defendant intended to cause severe emotional distress to the plaintiff or acted in reckless disregard of the fact that the

- 17 -
COMPLAINT

defendant's acts can cause sever emotional stress to anyone who is subjected to
the same.

69. In doing the foregoing act, the defendant acted maliciously, fraudulently,
oppressively, and in conscious disregard of the rights of the plaintiff.

### THIRD CAUSE OF ACTION
### VIOLATION OF CAL. PENAL CODE § 630, 631 and 632
### Pursuant to the Laws of the State of California

70. The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and
every previous allegation.

71. The defendant, through Perverted-Justice employees recorded the plaintiff's
telephone conversations without his knowledge and consent.

72. During the telephone conversation, there was no indication such as a beep, or a
sound at regular intervals, to indicate that the phone conversation was being
recorded.

73. On information and belief, the Perverted-Justice employees were not authorized
to record the plaintiff's phone conversation by any law enforcement official.

74. The defendant used hidden audio and video devices to record the plaintiff's sound
and images at the sting house and at the pre-booking area.

75. Inside the sting house, and at the pre-booking area, the plaintiff had a reasonable
expectation that his sound and visual images were not being recorded.

76. The plaintiff, upon discovering that his video and sound had been surreptitiously
recorded, broadcast on national and international TV, and put on the internet for
millions to see, suffered emotional distress, mental anguish, anxiety, outrage,
anger, humiliation, fear and uncertainty, and a feeling of helplessness.

77. The plaintiff never consented or authorized the defendant to edit, broadcast and exploit the aforementioned recordings and never wanted them to be made public.

78. The plaintiff suffered further emotional distress upon finding out that the defendant has commercially exploited the aforementioned recordings.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF U.S.C SECTION 2511**

79. The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

80. The defendant, through its consultant Perverted-Justice and hidden audio and video devices used by the Dateline cameramen, surreptitiously recorded plaintiff's oral communication without his knowledge and consent.

81. The employees of Perverted-Justice recorded phone call conversations using electronic devices without knowledge and consent of the plaintiff in violation of Cal. penal code § 630, 631 and 632.

82. The employees of Perverted-Justice recorded chat communication using electronic devices without knowledge and consent of the plaintiff and violated Cal. penal code § 630, 631 and 632. On information and belief, the Perverted-Justice employee were never contacted or authorized by any law enforcement official to record plaintiff's communication.

83. Dateline, with the aid of hidden and boon microphones, recorded the plaintiff's communication in a private house and at the pre-booking area.

84. While recording the plaintiff's communication, the defendant committed several tortious acts and acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the plaintiff.

**– 19 –**
COMPLAINT

85. The plaintiff, upon discovering that his communication has been surreptitiously recorded, broadcast on national and international TV, and put on the internet for millions to see, suffered emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and uncertainty, and a feeling of helplessness.

86. The plaintiff's intercepted communication was used for commercial gain by the defendant entitling plaintiff to recover punitive damages pursuant to U.S.C section 2520(b).

### FIFTH CAUSE OF ACTION
### INVASION OF PRIVACY VIOLATION OF CAL. CIV. CODE §1708.8(a)-(b)
### Pursuant to the Laws of the State of California

87. The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

88. The plaintiff was interrogated in an enclosed motor-home which on information and belief, was a property of Petaluma Police Department and was parked within the Petaluma airport area. Inside the motor-home, the plaintiff had the reasonable expectation of privacy and the reasonable expectation that his sound and images were not being recorded. However, at all times during the interrogation, the plaintiff's visual images and sound were recorded, which could not have been possible without the hidden devices which were setup in the motor-home. The plaintiff at no time while answering the police officer's questions knew that he is being secretly recorded for the whole world to see.

89. The plaintiff, at the outset of interrogation, invoked his Fifth Amendment right against self incrimination by stating that he wanted to talk to a lawyer but his

request was disregarded by the police officer and the plaintiff was compelled to answer the police officer's questions.

90. During his interview with the police officer, the plaintiff was asked several personal and confidential questions regarding intimate details of his personal life. The images of the plaintiff while answering those questions were recorded, edited and disseminated.

91. The hidden cameras served the purpose of morbid and sensational prying into the private life of the plaintiff for the defendant's benefit.

92. The defendant, by the use of fraud and committing a trespass, with the aid of secrete recording devices, invaded the privacy of the plaintiff, and recorded his sound and images while he was engaged in a personal activity. The plaintiff's substantive due process rights were violated during the coercive interrogation. The conduct of the defendant to secretly record the plaintiff's sound and images in violation of his constitutional rights to make a commercial program is highly offensive to a reasonable person.

93. The defendant took advantage of the plaintiff's vulnerability and confusion. The plaintiff, who had never been arrested before prior to this incident, was handcuffed behind his back, was subjected to thirst, glare of bright lights, humiliation and was compelled to answer the police officer's questions.

94. The defendant edited the aforementioned surreptitiously recorded footage and broadcast it as part of To Catch a Predator show.

95. The plaintiff, as a result of the foregoing, has been subjected to severe emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and

uncertainty, and a feeling of helplessness. Furthermore, as a result of the defendant's actions, the plaintiff lost his job, a successful career and suffered economic damages. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

96. The plaintiff never consented or authorized the defendant to edit, broadcast and exploit the footage and never wanted the footage to be made public. The plaintiff suffered further emotional distress upon finding out that the defendant has commercially exploited the footage.

97. In doing the foregoing acts, the defendant acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the plaintiff. Because this invasion of privacy was committed for commercial purposes, the defendant is subject to disgorgement to the plaintiff of any proceeds or other considerations as a result of this invasion pursuant to Cal. Civ. Code § 1708.8(d).

## SIXTH CAUSE OF ACTION
### INTRUSION
**Pursuant to the Laws of the State of California**

98. The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

99. At the sting house, and at the pre-booking area, the plaintiff had a reasonable expectation of privacy and had a reasonable expectation that his sound and images are not being recorded.

100.    The defendant intruded upon the plaintiff's privacy.

101.    The conduct of the defendant to urge the plaintiff to come into the house, to use hidden recording devices, and to engage plaintiff in conversation to secretly

record his images and sound in embarrassing situation is outrageous and highly offensive to a reasonable person.

102.     Furthermore, recording of the plaintiff's sound and images at the pre-booking area in violation of his rights is outrageous and highly offensive to a reasonable person.

103.     The defendant intended to cause harm to the plaintiff, and had a significant financial motive to obtain the plaintiff's video at the sting house, and at the pre-booking area. The defendant knowing that the plaintiff had a good reputation and is a law abiding citizen was eager to exploit the footage to create a deeply shocking show to attract more viewers. Despite knowing that in recording plaintiff's sound and images the defendant and the Petaluma police officers have committed several tortious acts, the defendant commercially exploited the footage without the plaintiff's knowledge, consent or authorization.

104.     The plaintiff, as a result of the foregoing, has been subjected to severe emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and uncertainty, and a feeling of helplessness. Furthermore, as a result of the defendant's actions, the plaintiff lost his job, a successful career and suffered economic damages. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

105.     The plaintiff never consented or authorized the defendant to edit, broadcast and exploit footage and never wanted the footage to be made public. The plaintiff suffered further emotional distress upon finding out that the

defendant has commercially exploited the footage and that the interrogating police

officer was merely acting for a commercial program.

106.     In doing the foregoing acts, the defendant acted maliciously, fraudulently,

oppressively, and in conscious disregard of the rights of the plaintiff.

### SEVENTH CAUSE OF ACTION
### PUBLICATION OF PRIVATE FACTS
### Pursuant to the Laws of the State of California

107.     The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges

each and every previous allegation.

108.     The plaintiff, in an enclosed motor-home, was interrogated by a police

officer in violation of his constitutional rights and the interrogation was recorded

by the defendant's hidden cameras and microphones.

109.     Images and sound of the plaintiff inside a private house were

surreptitiously recorded without his consent.

110.     At the aforementioned places, the plaintiff's had a reasonable expectation

of privacy and was engaged in personal activity.

111.     The defendant edited the recording in which it identified the plaintiff by

name and has been disseminating it over the last two years through repeated

broadcast on national and international TV and through the internet.

112.     The content recorded and broadcast by the defendant was not on the police

report and was not newsworthy. On the contrary, the content was embarrassingly

painful and deeply shocking. The defendant broadcast portions of the footage, out

of context, to show the plaintiff in a humiliating situation in order to gather the

attention of its viewers by pandering to lurid curiosity.

113.    The plaintiff, upon finding out that he has been surreptitiously recorded and his sound and video is available for public viewing, has suffered emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and uncertainty, and a feeling of helplessness. Furthermore, as a result of the defendant's actions, the plaintiff lost his job, a successful career and suffered economic damages. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

114.    The plaintiff never consented or authorized the defendant to edit, broadcast and exploit the footage and never wanted the footage to be made public. The plaintiff suffered further emotional distress upon finding out that the defendant has commercially exploited the footage.

115.    In doing the foregoing acts, the defendant acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the plaintiff.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF COMMON LAW RIGHT OF PRIVACY
### Pursuant to the Laws of the State of California

116.    The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

117.    The defendant used the plaintiff's sound and visual images without his permission to create a commercial program.

118.    The use of the plaintiff's sound and visual images was without the plaintiff's consent and authorization.

119.    The defendant used the plaintiff's sound and visual images for its financial gain.

120.     The plaintiff, as a result of the foregoing, has been subjected to severe emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and uncertainty, and a feeling of helplessness. Furthermore, as a result of the defendant's actions, the plaintiff lost his job and a successful career and suffered economic damages. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

121.     The plaintiff never consented or authorized the defendant to edit, broadcast and exploit the footage and never wanted the footage to be made public. The plaintiff suffered further emotional distress upon finding out that the defendant has commercially exploited the footage.

122.     In doing the foregoing acts, the defendant acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the plaintiff.

**NINTH CAUSE OF ACTION**
**FALSE LIGHT**
**Pursuant to the Laws of the State of California**

123.     The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

124.     The defendant, by concealing the conduct of it's employees, consultants, contractors, agents and concealing several events that took place prior to and during the sting operation has defamed the plaintiff and placed him in false light.

125.     The defendant concealed the fact that the Perverted-Justice decoys badgered, coaxed, cajoled and pressured the plaintiff to come to the sting house.

126.     The defendant concealed the fact that the decoy created the user profile of an adult woman which had a photo of a unknown woman, had all adult friends on

**- 26 –**
COMPLAINT

had all adult friends on the decoy's "friends list", was chatting in a chat room restricted to adults and that the decoy zoned-in on the plaintiff by adding him into its "buddy list" to continue an ongoing conversation.

127.    The defendant concealed the fact that the decoy repeatedly telephoned the plaintiff and begged him to come to the sting house even after the plaintiff told the decoy not to call him anymore. The decoy then appealed to the plaintiff's sympathy and urged him to come to the sting house. The defendant, on To Catch a Predator show, never mentioned of any telephone calls made by the decoy to the plaintiff and did not disclose the overbearing conduct of the decoy.

128.    The plaintiff, after reaching the sting house decided not to go into the house and turned back. Dateline personnel observed that through the hidden cameras and instructed the decoy to call the plaintiff on his cell-phone and to beg him to come into the house. The defendant concealed this fact and did not disclose it on To Catch a Predator show.

129.    The defendant edited the footage in which it identified the plaintiff by name, and disseminated plaintiff's sound and visual images to create a shocking TV show which placed the plaintiff in a false light.

130.    Because of the foregoing acts, the defendant has put the plaintiff in a false light and left its viewers with false impressions. The conduct of the defendant of placing the plaintiff in a false light, labeling him as a sexual predator and conspiring with law enforcement to make a commercial program is outrageous and highly offensive to a reasonable person.

131.     The plaintiff, as a result of the foregoing, has been subjected to severe

emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and

uncertainty, and a feeling of helplessness. Furthermore, as a result of the

defendant's actions, the plaintiff lost his job, a successful career and suffered

economic damages. The plaintiff also suffered damage to his good name and

reputation because the defendant labeled him as a sexual predator.

132.     The plaintiff never consented or authorized the defendant to edit,

broadcast and exploit the footage and never wanted the footage to be made public.

The plaintiff suffered further emotional distress upon finding out that the

defendant has commercially exploited the footage.

133.     In doing the foregoing acts, the defendant acted maliciously, fraudulently,

oppressively, and in conscious disregard of the rights of the plaintiff.

## TENTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
#### Pursuant to the Laws of the State of California

134.     The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges

each and every previous allegation.

135.     Before airing of To Catch a Predator show on October 6, 2006, the

plaintiff was gainfully employed, had a successful career, was highly regarded by

his peers and employer, and had a tremendous opportunity for growth in his

career with future economic benefits. On October 9, 2006, the weekend after the

broadcast, the plaintiff was put on administrative leave by his employer and was

forced to resign shortly thereafter. The reason for the administrative leave given

by the plaintiff's employer was that "You have been arrested on predator related charges".

136.    The defendant, at all relevant times knew that the plaintiff is employed and knew that by labeling him as a sexual predator and by broadcasting his video, he can lose his job. Notably, a Dateline host at the end of the aforementioned episode made a comment that the men shown in this episode could lose their jobs.

137.    The defendant abused its powers, and knowingly and willing interfered with the plaintiff's prospective economic advantage.

138.    During the last two years, the defendant has been re-running To Catch a Predator show like a religious sermon. The defendant broadcast the show on various TV channels sometimes two times in a day and multiple times in a week.

139.    The defendant's actions were targeted to annoy, vex and harass the plaintiff, and to unjustly profit from him. The defendant's actions constitute various torts mentioned in this complaint.

140.    The plaintiff, as a result of the foregoing, has been subjected to severe emotional distress, mental anguish, anxiety, outrage, anger, humiliation, fear and uncertainty, and a feeling of helplessness. Furthermore, as a result of the defendant's actions, the plaintiff lost his job, a successful career and suffered economic damages. The plaintiff also suffered damage to his good name and reputation because the defendant labeled him as a sexual predator.

141.    In doing the foregoing acts, the defendant acted maliciously, fraudulently, oppressively, and in conscious disregard of the rights of the plaintiff.

## ELEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### Pursuant to the Laws of the State of California

142.     The plaintiff, Anurag Tiwari, incorporates by reference and re-alleges each and every previous allegation.

143.     The defendant without the plaintiff's consent or authorization recorded his sound and images, disseminated them on multiple TV channels, put the plaintiff's recording on the internet and on information and belief, sold the aforementioned recording to other national and international TV stations.

144.     During the last two years the defendant has been constantly broadcasting and distributing recordings of the plaintiff's sound and images to its commercial benefit. The defendant made profits for itself by commercially exploiting plaintiff's sound, visual images and a good name.

145.     As a result of the above mentioned allegations, the defendant has unjustly enriched and the plaintiff seeks restitution and profit from unauthorized broadcast and distribution.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Anurag Tiwari, prays that the Court enter a judgment against the defendant, NBC, as follows:

146.     On the first cause of action, judgment against the defendant for compensatory damages in an amount not less than Twenty Million Dollars ($20,000,000.00) and reasonable attorney fees. Judgment against the defendant for punitive damages in an amount not less than Twenty Five Million Dollars ($25,000,000.00) to deter the defendant from repeating the unlawful conduct.

147.     On the second cause of action, judgment against the defendant for compensatory damages in an amount not less than Ten Million Dollars ($10,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Fifteen Million Dollars ($15,000,000.00) to deter the defendant from repeating the unlawful conduct.

148.     On the third cause of action, judgment against the defendant for compensatory damages in an amount determined by the Court.

149.     On the fourth cause of action, judgment against the defendant for compensatory damages in an amount determined by the Court. Judgment against the defendant for punitive damages in an amount not less than Two Million Dollars ($2,000,000.00) to deter the defendant from repeating the unlawful conduct.

150.     On the fifth cause of action, judgment against the defendant for compensatory damages in an amount not less than Two Million Dollars ($2,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Four Million Dollars ($4,000,000.00) to deter the defendant from repeating the unlawful conduct. Judgment against the defendant subjecting the defendant to disgorgement of profits as a result of violation of Cal. Civ. Code §1708.8.

151.     On the sixth cause of action, judgment against the defendant for compensatory damages in an amount not less than Two Million Dollars ($2,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Four Million Dollars ($4,000,000.00) to deter the defendant

from repeating the unlawful conduct. Judgment against the defendant subjecting the defendant to disgorgement of profits gotten from the unauthorized use of plaintiff's sound and images.

152.    On the seventh cause of action, judgment against the defendant for compensatory damages in an amount not less than Two Million Dollars ($2,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Four Million Dollars ($4,000,000.00) to deter the defendant from repeating the unlawful conduct. Judgment against the defendant subjecting the defendant to disgorgement of profits gotten from the unauthorized use of plaintiff's sound and images.

153.    On the eighth cause of action, judgment against the defendant for compensatory damages in an amount not less than Two Million Dollars ($2,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Four Million Dollars ($4,000,000.00) to deter the defendant from repeating the unlawful conduct. Judgment against the defendant subjecting the defendant to disgorgement of profits gotten from the unauthorized use of plaintiff's sound and images.

154.    On the ninth cause of action, judgment against the defendant for compensatory damages in an amount not less than Two Million Dollars ($2,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Four Million Dollars ($4,000,000.00) to deter the defendant from repeating the unlawful conduct. Judgment against the defendant subjecting

the defendant to disgorgement of profits gotten from the unauthorized use of plaintiff's sound and images.

155. On the tenth cause of action, judgment against the defendant for compensatory damages in an amount not less than Two Million Dollars ($2,000,000.00). Judgment against the defendant for punitive damages in an amount not less than Four Million Dollars ($4,000,000.00) to deter the defendant from repeating the unlawful conduct.

156. On the eleventh cause of action, judgment against the defendant for the amount determined by the Court. Judgment against the defendant subjecting the defendant to disgorgement of profits gotten from the unauthorized use of plaintiff's sound and images.

157. A permanent injunction requiring the defendant to stop broadcasting To Catch a Predator show containing the plaintiff's sound, images and video, and remove the plaintiff's images, video, sound and text of oral communication from its web-site. The plaintiff also requests that the defendant destroy each and every copy of the aforementioned recordings stored on any media in the defendant's possession to prevent any further uses of such.

158. All additional relief to which to the plaintiff is entitled.

## REQUEST FOR JURY TRIAL

The plaintiff, Anurag Tiwari, requests a jury trial on all appropriate issues.

Respectfully submitted,

Anurag Tiwari, PhD

- **33** –
COMPLAINT

Clear Form

AO 440 (Rev. 03/08)  Civil Summons (cand 6/08)

# UNITED STATES DISTRICT COURT

for the

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANURAG TIWARI | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) Civil Action No. C08 03988 **EMC** |
| NBC UNIVERSAL INC. | ) |
| | ) |
| Defendant | ) |

### Summons in a Civil Action

To: NBC UNIVERSAL, INC., 30 Rockfeller Plaza, New York, New York, 10112
*(Defendant's name)*

A lawsuit has been filed against you.

Within ___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

ANURAG TIWARI
2250 MONROE Av #129
SANTA CLARA CA, 95050

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Richard W. Wieking
Name of clerk of court

Betty J. Walton

Date: **AUG 21 2008**

Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*