Vivang Tiwari
2250 Monroe St #129
Santa Clara, CA 95050

FILED

AUG 2 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

EXHIBIT A

CASE No: CO8 03988
EMC



ORIGINAL
FULLY EXECUTED

Non-Precedential, Non-Quotable and Non-Citable



NBC UNIVERSAL

January 7, 2008

As of June 15, 2006
    As revised as of November 28, 2006

N.S. Bienstock
1740 Broadway
24th Floor
New York, New York 10019
Attention: Steve Sadicario

Re:    "DATELINE" / PERVERTEDJUSTICE.COM

Dear Steve:

The following sets forth the agreement ("Agreement") between NBC News, a division of NBC Universal Inc. (hereinafter NBC News) shall be referred to as "Studio") and your client, Perverted Justice Foundation, Inc. (d/b/a PervertedJustice.Com) regarding the aforecaptioned one (1) hour television series project (the "Series"). Each of Perverted Justice Foundation, Inc. and Jawbone Canyon Investments, LLC represents and warrants that [i] prior to November 28, 2006, Jawbone Canyon Investments, LLC was doing business as PervertedJustice.Com and was a party to this Agreement and [ii] on November 28, 2006, Perverted Justice Foundation, Inc. acquired all of Jawbone Canyon Investments, LLC 's right, title and interest in and to this Agreement and the aforecaptioned project. The term "Consultant" shall refer to Jawbone Canyon Investments, LLC from June 15, 2006 through November 28, 2006 and thereafter to Perverted Justice Foundation, Inc.

1.    SERIES SERVICES

    (a)    Studio hereby engages Consultant (on a "pay-or-play" basis pursuant to paragraph 4 of the Standard Terms and Conditions attached hereto), and Consultant agrees, to provide services as a consultant and expert and/or otherwise as reasonably required by Studio (all such services, collectively, "Consultant Services") on all those episodes of the Series produced for the 2006/2007 broadcast year ("Year I") that include hidden camera sting operations whereby potential sexual predators are caught apparently seeking sex with underage individuals, but no less than seven (7) episodes (the "Year 1 Guarantee"). The aforesaid episodes of the 2006/2007 broadcast year and any such episodes of any subsequent broadcast year of the Series that include hidden camera sting operations whereby potential sexual predators are caught apparently seeking sex with

- 1 -

underage individuals will be collectively referred to as the "To Catch A Predator Series". The per episode all-inclusive fee for Consultant's services on the To Catch A Predator Series for the 2006/2007 broadcast year will be Seventy-Five Thousand Dollars ($75,000). The aforesaid compensation for each episode comprising the Year 1 Guarantee shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/3 upon Studio's receipt of a signed copy of this Agreement from Consultant; 1/3 upon commencement of services on the applicable episode; and 1/3 upon completion of services on the applicable episode. The aforesaid compensation for any episode produced during Year 1 in excess of the Year 1 Guarantee shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/2 upon commencement of services on the applicable episode; and 1/2 upon completion of services on the applicable episode. For purposes of this paragraph 1(a) and paragraphs 1(b), 1(c), 1(d) and 1(e), a broadcast year shall begin on the season start date as defined by Nielsen Media Research and continue until the next season start date as defined by Nielsen Media Research.

(b)   Studio hereby engages Consultant (on a "pay-or-play" basis pursuant to paragraph 4 of the Standard Terms and Conditions attached hereto), and Consultant agrees, to render Consultant Services on all episodes of the To Catch A Predator Series produced for the 2007/2008 broadcast year ("Year 2"), if any, provided that if any episodes of the To Catch a Predator Series are produced for the 2007/2008 broadcast year, then Consultant will be guaranteed no less than seven (7) episodes (the "Year 2 Guarantee"). The per episode all-inclusive fee for Consultant's services on the To Catch A Predator Series for the 2007/2008 broadcast year will be Seventy-Nine Thousand Eight Hundred Seventy-Five Dollars ($79,875). The aforesaid compensation for each episode comprising the Year 2 Guarantee shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/3 upon Studio's receipt of a signed copy of this Agreement from Consultant; 1/3 upon commencement of services on the applicable episode; and 1/3 upon completion of services on the applicable episode. The aforesaid compensation for any episode produced during Year 2 in excess of the Year 2 Guarantee shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/2 upon commencement of services on the applicable episode; and 1/2 upon completion of services on the applicable episode.

(c)   If Consultant is engaged to render Consultant Services on all To Catch A Predator Series episodes produced for the 2007/2008 broadcast year, Studio shall have the option (the "Year 3 Option") to engage Consultant (on a "pay-or-play" basis pursuant to paragraph 4 of the Standard Terms and Conditions attached hereto) to render Consultant Services on all episodes of the To Catch A Predator Series produced for the 2008/2009 broadcast year ("Year 3"), but no less than seven (7) episodes (the "Year 3 Guarantee"). Such option shall be exercisable by written notice to Consultant on or before June 30, 2008. The per episode all-inclusive fee for Consultant's services on the To Catch A Predator Series for the 2008/2009 broadcast year will be Eighty-Five Thousand Sixty-Seven Dollars ($85,067). The aforesaid compensation for each episode comprising the Year 3 Guarantee shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/3 upon Studio's receipt of a signed copy of this Agreement from Consultant;

- 2 -

1/3 upon commencement of services on the applicable episode; and 1/3 upon completion of services on the applicable episode. The aforesaid compensation for any episode produced during Year 3 in excess of the Year 3 Guarantee, shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/2 upon commencement of services on the applicable episode; and 1/2 upon completion of services on the applicable episode.

(d)    If Consultant is engaged to render Consultant Services on all To Catch A Predator Series episodes produced for the 2008/2009 broadcast year, Studio shall have the option (the "Year 4 Option") to engage Consultant (on a "pay-or-play" basis pursuant to paragraph 4 of the Standard Terms and Conditions attached hereto) to render Consultant Services on all episodes of the To Catch A Predator Series produced for the 2009/2010 broadcast year ("Year 4"), but no less than seven (7) episodes (the "Year 4 Guarantee"). Such option shall be exercisable by written notice to Consultant on or before June 30, 2009. The per episode all-inclusive fee for Consultant's services on the To Catch A Predator Series for the 2009/2010 broadcast year will be Ninety Thousand Five Hundred Ninety-Six Dollars ($90,596). The aforesaid compensation for each episode comprising the Year 4 Guarantee shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/3 upon Studio's receipt of a signed copy of this Agreement from Consultant; 1/3 upon commencement of services on the applicable episode; and 1/3 upon completion of services on the applicable episode. The aforesaid compensation for any episode produced during Year 4 in excess of the Year 4 Guarantee, if any, shall be payable, subject to Studio's receipt of a signed copy of this Agreement from Consultant, as follows: 1/2 upon commencement of services on the applicable episode; and 1/2 upon completion of services on the applicable episode.

(e)    If Studio does not exercise the Year 3 Option and/or the Year 4 Option, Studio shall engage Consultant (on a "pay-or-play" basis pursuant to paragraph 4 of the Standard Terms and Conditions attached hereto) to render services as a non-exclusive part-time consultant (such services, "Part-Time Consultant Services") for all episodes of the To Catch A Predator Series actually produced for the life of the To Catch A Predator Series, commencing with the first broadcast year following the last broadcast year for which Studio engaged Consultant to render Consultant Services. Consultant's compensation for said Part-Time Consultant Services shall be Fifteen Thousand Dollars ($15,000) flat per episode for all episodes of the To Catch A Predator Series actually produced for the life of the To Catch A Predator Series for which Consultant renders such Part-Time Consultant Services.

(f)    Consultant's Part-Time Consultant Services shall include the following services to the extent reasonably required by Studio: consulting on hiring of photographers, consultants, and/or experts; and meeting periodically with the producers (such meetings may be rendered by telephone unless Studio reasonably requires Consultant to attend such meetings in-person). Consultant's rendition of the aforesaid services to the extent reasonably required by Studio is of the essence to Consultant receiving the applicable compensation for such Non-Exclusive Consultant Services.

(g)    All episodic compensation set forth in this Agreement is for one (1) hour Series

- 3 -

programs and/or Series programs with a run time in excess of sixty (60) minutes, but less than seventy-five (75) minutes (i.e., a "super-sized" episode). For programs with a run time of seventy-five (75) minutes or longer, the episodic compensation shall be increased on a pro-rata basis, based on sixty (60) minutes.

(h)    To the extent that services provided by Consultant hereunder are subject to collective bargaining agreements with any union, Consultant acknowledges and agrees that Studio shall be entitled to all benefits applicable to Studio, including the right to credit the applicable union scale rates against the fees hereunder. Moreover, if any applicable collective bargaining agreement requires other compensation related to Contractor's services hereunder, such compensation shall be deemed paid by the fees set forth in this paragraph 1.

(i)    Notwithstanding anything contained herein, nothing shall prevent Studio, including, but not limited to, the Series, from covering newsworthy events that may be of a similar topic as those covered in the To Catch A Predator Series and the coverage of such events shall not require the engagement of, or any payment to, Consultant pursuant to this Agreement. For example, if law enforcement or other governmental authorities contact Studio regarding the coverage of a pre-existing sting/hidden camera operation on potential sexual predators that Studio is invited to cover, Studio shall have the unrestricted ability to cover such story independent from any obligations set forth in this Agreement.

(j)    Consultant acknowledges and agrees that Studio has made no representations regarding the tax consequences of any amounts received pursuant to this Agreement. It is agreed that Studio shall make no withholdings from any payments due to Consultant with respect to Consultant' services under this Agreement, and that Consultant, in turn, will comply with all tax laws related to the compensation received by Consultant for Consultant's services under this Agreement. Upon the reasonable written request of Studio, Consultant shall furnish to Studio, within thirty (30) days after the written request, an executed Federal Form 4669 for any tax year covered under this Agreement. Consultant further acknowledges and agrees that Consultant shall be considered a freelancer and/or independent contractor and/or outside vendor, and shall not be entitled to benefits of Studio and/or any benefits of Studio's parent or affiliated companies.

(k)    As to Consultant's services under this Agreement, Consultant shall, and hereby does, discharge Studio and its parent or affiliated companies from all obligations imposed on employers including, without limitation, the withholding and payment of taxes as well as the making of any payments required to be made to Consultant under any applicable collective bargaining agreement, other than the extent to which, if any, the parties have otherwise agreed in this Agreement. Consultant shall defend, indemnify and hold Studio and its parent or affiliated companies, employees, agents or officers, harmless from and against any and all claims, demands, deficiencies, levies, fines, assessments, judgments, liabilities, penalties, interest, damages, costs, expenses and reasonable outside attorney's fees (collectively referred to as "Assessments") that Studio and/or its parent or affiliated companies, employees, agents or officers, shall incur by reason of Studio's and/or Consultant's failure to pay any tax or other sum

- 4 -

required to be paid or withheld by any employer with respect to Consultant's services under this Agreement. Further, at the time of any Assessments, Consultant agrees to pay Studio the assessed amounts. Studio is not required to challenge or litigate any of the Assessments.

(l)   Consultant will comply with all applicable laws, regulations, orders and ordinances in rendering the services provided for hereunder. Consultant shall abide by the company policies of NBC Universal, Inc., including the policies of Studio. In addition, Consultant warrants and represents that Consultant's services and any materials furnished by Consultant shall comply with the Rules and Regulations of the F.C.C. and any other governmental body having jurisdiction over NBC Universal, Inc.

(m)   While Consultant is engaged to render and is actually rendering Consultant Services (i.e., as opposed to pay-or-play) on the To Catch A Predator Series hereunder, Consultant shall have a meaningful right of consultation regarding the geographical locations of the sting operations that are conducted in connection with the To Catch A Predator Series; provided, however, that Studio's determination shall be final with respect to such matter.

2.   **EXCLUSIVITY**

(a)   During the term of Consultant's engagement to render Consultant Services hereunder, Consultant's services shall be exclusive to Studio in U.S. and Canadian network and cable network television and the principal members of Consultant shall render services to Studio on a first-call, first-priority, in-person basis. To the extent Consultant renders services on any international series, program and/or special, subject to Studio's aforementioned first-call, first-priority and in-person rights, no such series, program and/or special featuring "predator" sting operations may be sold or exhibited in the United States or Canada. To the extent Consultant is permitted to render any services for any third party, in no event shall such services materially interfere in any manner with Consultant's services with respect to the Series, which determination of material interference or noninterference Studio shall be entitled to make in its good faith business judgment. Consultant's right to render services in connection with the production of a syndication program are further subject to paragraph 3 below.

(b)   Notwithstanding anything to the contrary contained herein, in the event that Consultant elects to pursue or engage in outside business activities that are neither precluded nor exclusive to Studio hereunder, but are in conflict with Studio's News policies, Studio may, on such basis alone, immediately suspend and/or terminate Consultant's services hereunder. If Consultant's services are so suspended, Studio shall have no obligations to Consultant hereunder with respect to any episodes of the Series produced during such suspension (e.g., Studio shall not have any pay-or-play obligations to Consultant with respect to any episodes of the Series produced during such suspension), and Consultant shall have no further obligations to render any services for Studio for any episodes of the Series produced during such suspension. If Consultant's services are terminated, Studio shall have no obligations to Consultant hereunder with respect to any episodes of the Series produced after such termination (e.g., Studio shall not have any pay-or-play

obligations to Consultant with respect to any episodes of the Series produced [illegible] termination), and Consultant shall have no further obligations to render any [illegible] Studio for any episodes of the Series produced after such termination.

3.    **SYNDICATION PROGRAMS**

At either Studio's request or Consultant's request, at any time or times during [illegible] Consultant's engagement to render Consultant Services hereunder, Consultant shall [illegible] good faith with Studio for a period of not less than thirty (30) days with respect to the terms [illegible] conditions for Consultant's rendering services in connection with the production of a syndication program. Consultant may not, at any time during the term of Consultant's engagement to render Consultant Services hereunder, negotiate with others concerning any syndication programming, unless and until Consultant shall first have negotiated with Studio [illegible] a syndication program pursuant to the immediately preceding sentence. If Studio and Consultant do not reach an agreement by the end of the aforesaid thirty (30) day negotiating period, Consultant shall not furnish or agree to furnish services in connection with any syndication program for any other person, firm or corporation, without giving Studio a first opportunity to enter into an agreement with Consultant for a syndication program [illegible] conditions at least as favorable to Studio as those offered to Consultant by any such other person, firm, or corporation (which Consultant is willing to accept) or by Consultant to such other person, firm, or corporation (which he/she, they or it is willing to accept). Studio shall have seven (7) business days from the date of receipt of written advice from Consultant of such offer (containing full details in regard thereto) in which to accept or reject same. Studio shall be deemed to have accepted said offer by acceptance of the terms thereof reducible to a determinable amount of money. If Studio rejects said offer or fails to accept the same within the time above specified, then and then only shall Consultant be free to furnish or agree to furnish such other person, firm, or corporation Consultant's services in connection with a syndication program, but not in connection with any "predator" sting operations. If Consultant does not accept such offer, the terms hereof shall apply to any subsequent offer received or made to Consultant during the term of Consultant's engagement to render Consultant Services hereunder for a syndication program. Consultant shall not accept, and Studio shall not be required to meet the provisions of any such offer unless it has been reduced to writing signed by the offeror, and delivered to Studio with Consultant's written acknowledgement of willingness to accept same. Studio's failure to accept any such offer shall not constitute a waiver of first refusal with respect to subsequent offers during the matching period set forth above.

4.    **MODIFIED ADJUSTED GROSS RECEIPTS**

In addition to the compensation set forth elsewhere in the Agreement, and provided Consultant is not in breach under the Agreement, Consultant will be entitled to the following participation in Studio's "Modified Adjusted Gross Receipts" derived by Studio from the off-Network distribution of each stand-alone To Catch A Predator Series episode produced during the life of the To Catch A Predator Series. Consultant shall be entitled to twelve and one-half percent (12.5%) of such Modified Adjusted Gross Receipts with no deduction of Third Party Participations (other than agency package commissions – which come off the top). "Modified Adjusted Gross Receipts" will be defined, calculated and paid out in

accordance with the definition of Modified Adjusted Gross Receipts attached hereto as
Appendix II.

5.   **FIRST NEGOTIATION/FIRST REFUSAL**

(a)   At Studio's request at any time or times during the term of Consultant's engagement
to render Consultant Services hereunder, Consultant shall negotiate in good faith with
Studio for a period of not less than thirty (30) days with respect to the terms and
conditions for Consultant's continuing to render services on behalf of Studio
subsequent to the term of Consultant's engagement to render Consultant Services
hereunder. Consultant may not negotiate with others for any television services,
unless and until, on the day thirty (30) days prior to the expiration of Consultant's
engagement to render Consultant Services hereunder, Consultant and Studio have not
reached an agreement under which Consultant shall continue to provide services to
Studio subsequent to the term of Consultant's engagement to render Consultant
Services hereunder.

(b)   At no time prior to a date of ninety (90) days subsequent to the term of Consultant's
engagement to render Consultant Services hereunder may Consultant furnish or agree
to furnish to any other person, firm or corporation Consultant's services in
television, sound radio or new media, without giving Studio the first opportunity to
enter into an agreement with Consultant therefore on terms and conditions at least as
favorable to Studio as those offered to Consultant by any such other person, firm, or
corporation (which Consultant is willing to accept) or by Consultant to such other
person, firm, or corporation (which he/she, they or it is willing to accept). Studio
shall have seven (7) business days from the date of receipt of written advice from
Consultant of any such offer (containing full details in regard thereto) in which to
accept or reject same. Studio shall be deemed to have accepted said offer by
acceptance of the terms thereof reducible to a determinable amount of money. If
Studio rejects said offer or fails to accept the same within the time above specified,
then and then only shall Consultant be free to furnish or agree to furnish such other
person, firm, or corporation Consultant's services in television or the internet. If
Consultant does not accept such offer, the terms hereof shall apply to any subsequent
offer received by or made to Consultant during the matching period specified above.
Consultant shall not accept, and Studio shall not be required to meet the provisions
of any such offer unless it has been reduced to writing, signed by the offeror, and
delivered to Studio with Consultant's written acknowledgement of willingness to
accept same. Studio's failure to accept shall not constitute a waiver of first refusal
with respect to subsequent offers during the matching period specified above.

(c)   Consultant understands and agrees that, prior to the date that is thirty (30) days prior
to the end of the term of Consultant's engagement to render Consultant Services
hereunder, and subject to paragraph 5(b) above, Consultant will not contract, offer to
contract or negotiate with any third party concerning Consultant's services that
would interfere with Consultant's services for Studio hereunder (except as may be
expressly permitted elsewhere in this Agreement) or engage in any other conduct
that is intended to or has the effect of circumventing Studio's rights under this

E:\Busaf\Contract\Vesecky\News\Dateline\Perverted Justice\Agreement5.doc

paragraph 5 or that is intended to or has the effect of interfering with Consultant's ability to satisfy all of Consultant's responsibilities or obligations under this paragraph.

(d)    In the event that, pursuant to paragraph 5(b) above, Studio matches an offer by another person, firm or corporation pursuant to which Consultant would perform only services in new media (but none in television or sound radio), for that other person, firm or corporation, Studio shall not have the right, unless agreed otherwise, to assign Consultant to perform services in television or sound radio.

6.    **AGENCY PACKAGE COMMISSION**

Specifically, in consideration of N.S. Bienstock furnishing the Consultant Services and, if applicable, the Non-Exclusive Consultant Services, of Consultant, provided Consultant is not in breach of this Agreement or any Related Agreement with Studio, then for each To Catch a Predator Series and any other television episode (including, without limitation, any syndication episode) produced for which Consultant renders services hereunder, Studio will pay N.S. Bienstock an amount equal to ten percent (10%) of any compensation (including any participation paid to Consultant under paragraph 4 of this Agreement) paid to Consultant for such services. For purposes of this Agreement, the term "Related Agreement" shall refer to any agreement related to any television episode (including, without limitation, any syndication episode) produced for which Consultant renders services hereunder.

7.    **STANDARD TERMS**

The Standard Terms and Conditions attached hereto as Appendix I are hereby incorporated into this Agreement by reference in connection with Consultant's Consultant Services. Consultant shall be referred to as "Artist" in such Standard Terms and Conditions. In the event of a conflict between the terms and conditions hereof and the terms and conditions set forth in such Standard Terms and Conditions attached hereto, the terms and conditions hereof shall control.

[Remainder of page intentionally left blank]

E:\Busa\Contract\Vesecky\News\Dateline\Perverted Justice\Agreement5.doc

8.   **ENTIRE AGREEMENT**

This Agreement, including the Standard Terms and Conditions and the Definition of
Modified Adjusted Gross Receipts attached hereto, collectively constitutes the entire
agreement between Studio and Consultant with respect to the subject matter hereof, all
previous understandings whether oral or written having been merged herein. No
representations or warranties have been made other than those expressly set forth herein.
This Agreement may not be changed, modified, renewed, extended, or discharged or any
covenant or provision hereof waived except by an agreement in writing signed by the party
against whom enforcement of the change, modification, renewal, extension, discharge or
waiver is sought.

Please confirm your Agreement to the foregoing by signing below where indicated.

Very truly yours,

Michelle Vesecky

ACCEPTED AND AGREED TO:

JAWBONE CANYON INVESTMENTS, LLC
(D/B/A PERVERTEDJUSTICE.COM)

By: _____
       (signature)
       Dennis Kerr
       (print name)
Title: _____

Date: __2/1/08__

PERVERTED JUSTICE FOUNDATION, INC.
(D/B/A PERVERTEDJUSTICE.COM)

By: _____
       (signature)
       Dennis Kerr
       (print name)
Title: _____

Date: __2/1/08__

NBC NEWS,
a division of NBC UNIVERSAL INC.

By: _____
       (signature)
       Lee Straus
       Senior Vice President
       Business Affairs
Title: _____

Date: __2/20/08__

- 9 -

APPENDIX I

STANDARD TERMS AND CONDITIONS

1.    CREATIVE CONTROL

Studio's determination in all matters respecting creative elements of the Series shall be final and controlling.

2.    PROMOTION/NAME AND LIKENESS

Studio shall have the irrevocable right in perpetuity, throughout the universe, to use, and to grant to third parties the right to use, Artist's name, voice, actual or simulated likeness, in any media now known or hereafter devised, for the purposes of advertising, marketing and promotion (including "institutional" or trade advertising) related to any program(s) produced hereunder (which advertising, marketing and promotion may also include references to other programs in addition to the programs for which Artist is rendering services). Studio's aforesaid right to use Artist's name, voice, actual, or simulated likeness is an exclusive right with respect to the programs produced hereunder, except as otherwise specified in paragraph 4 below with respect to Artist's right to make incidental, non-derogatory references to the programs produced hereunder in Artist's personal publicity. Studio acknowledges that Artist and others may retain the right to use Artist's name, voice, actual or simulated likeness other than in connection with the programs produced hereunder. Without limiting the foregoing, Studio shall have the right to use Artist's name, but only as part of a billing block, in connection with merchandising, advertising, and commercial tie-ins. Studio will not use Artist's voice or likeness in connection with any merchandising or commercial tie-ins. Studio will not use Artist's name, voice or likeness as an endorsement by Artist of any product or service (other than the programs) unless Studio first obtains Artist's prior written consent for such endorsement.

3.    PUBLICITY

As between Studio and Artist, any publicity, paid advertisements, press notices or other material information with respect to this Agreement and any of the projects and terms referred to herein shall be under the sole control of Studio and subject to the limitations contained in paragraph 2 above. Therefore, Artist shall not personally release, nor consent to or authorize any person or entity to release, such information without the express prior written approval of Studio. Notwithstanding the foregoing, Artist may make incidental, non-derogatory references to any programs produced hereunder in Artist's personal publicity; provided, however, that Artist shall not release any information regarding any newsworthy events until Studio has released a press release disclosing that information.

4.    PAY OR PLAY

Nothing herein shall require Studio to use the services of Artist in any manner. Without limiting the foregoing, it is understood and agreed that Studio shall have no obligation to produce, complete, release, distribute, advertise or exploit any television program or series, and Artist agrees not to make any claims or bring any actions or proceedings against Studio for any loss or damage Artist may suffer by reason of such failure to produce, complete, release, distribute, advertise or exploit any such television programs or series. If Studio elects not to use Artist's services, Studio shall have fully discharged its obligations by paying to Artist the applicable fixed monetary compensation hereunder and any contingent compensation referred to in Paragraph 4 of the Agreement (to which these Standard Terms and Conditions are attached) which shall have vested under the Agreement at the time of Studio's election based on services actually rendered by Artist hereunder (as opposed to paid-or-played). Any decision by Studio not to use Artist's services shall not affect the exclusivity rights granted to Studio pursuant to the Agreement, unless Studio agrees in a written notice to Artist that Studio is waiving those exclusivity rights. Any such waiver shall be conditioned upon Artist promptly reporting to Studio the amount of any and all compensation earned by Artist in the television industry during the period when Artist's services would have been exclusive to Studio if not for the waiver, and all such compensation will be credited against the pay-or-play compensation due from Studio pursuant to this paragraph.

5.    WARRANTIES

Artist represents and warrants that:

— 1 —

E:\Busaf\Contract\Vesecky\News\Dateline\Porverted Justice\Agreement5.doc