1  THOMAS R. BURKE (CA State Bar No. 141930)
2  JEFF GLASSER (CA State Bar No. 252596)
   DAVIS WRIGHT TREMAINE LLP
3  505 Montgomery Street, Suite 800
   San Francisco, California  94111
4  Telephone:      (415) 276-6500
   Facsimile:      (415) 276-6599
5  Email: thomasburke@dwt.com; jeffglasser@dwt.com
   Attorneys for Defendant NBCUniversal Media, LLC

6

7

8                UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  ANURAG TIWARI,                    )  Case No. **C08-3988 EMC**
                                      )  Assigned to the Hon. Edward M. Chen
13              Plaintiff(s),         )
                                      )  **DEFENDANT NBCUNIVERSAL MEDIA,**
14      v.                            )  **LLC'S NOTICE OF MOTION AND**
                                      )  **MOTION TO DISMISS PLAINTIFF**
15  NBC UNIVERSAL, INC.,              )  **ANURAG TIWARI'S 42 U.S.C. § 1983**
                                      )  **CLAIM**
16              Defendant(s).         )
                                      )  **DATE:  AUGUST 26, 2011**
17                                    )  **TIME:  1:30 P.M.**
                                      )  **CTRM.:  C (15TH FLOOR)**
18  _____)

19

20

21

22

23

24

25

26

27

28

*DAVIS WRIGHT TREMAINE LLP*

# TABLE OF CONTENTS

Page

1. INTRODUCTION ........................................................................................................... 1

2. THE ISSUES IN THIS MOTION CAN AND SHOULD BE DECIDED AT THE
   PLEADING STAGE, PARTICULARLY GIVEN THE IMPACT ON
   NBCUNIVERSAL'S FIRST AMENDMENT RIGHTS. ................................................ 3

3. PLAINTIFF CANNOT STATE A COGNIZABLE SECTION 1983 CLAIM
   AGAINST NBC UNIVERSAL. ..................................................................................... 5

   A. The First Amendment Protects NBCUniversal From Being Punished For
      Truthfully Broadcasting Petaluma Police's Arrest of Plaintiff. ............................. 5

   B. Plaintiff Cannot Establish Deprivation Of A Constitutional Right, Which Is
      Required For Recovery Under Section 1983. ........................................................ 12

      1. The Constitutional Right Of Privacy Does Not Extend To
         Complaints About Production And Broadcasts Of News Reports
         Such As This One. .......................................................................................... 12

      2. Plaintiff Cannot Establish That Petaluma Police's Arrest Of Him
         Violated The Fourth Amendment. .................................................................. 15

      3. Plaintiff Cannot Impute An Excessive Force Claim From His
         Arrest To NBCUniversal, And The Petaluma Police Did Not Use
         Excessive Force In Arresting Plaintiff. .......................................................... 20

      4. Plaintiff Cannot State A Fourteenth Amendment Claim Against
         NBCUniversal For "Pre-trial Punishment." .................................................. 23

4. CONCLUSION ............................................................................................................ 24

DAVIS WRIGHT TREMAINE LLP

i

# TABLE OF AUTHORITIES

Page

CASES

*Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006)................................................................4

*Ahmad A. v. Superior Court*,
215 Cal. App.3d 528 (1989)................................................................19

*Ashcroft v. Iqbal*,
– U.S. –, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................3, 20

*Baker v. Howard*,
419 F.2d 376 (9th Cir. 1969) (per curiam) ........................12, 13

*Barry v. Time*,
584 F. Supp. 1110 (N.D. Cal. 1984) ........................4

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................6, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................3, 20, 21

*Bell v. Wolfish*,
441 U.S. 520 (1979) ........................23

*Billington v. Smith*,
292 F.3d 1177 (9th Cir. 2002)........................21

*Blatty v. New York Times Co.*,
42 Cal.3d 1033 (1986)........................7, 8

*Bose Corp. v. Consumers Union of United States, Inc.*,
466 U.S. 485 (1984) ........................7

*Bradbury v. Superior Court*,
49 Cal.App.4th 1108 (1996)........................6

*Brooks v. American Broadcasting Cos.*,
737 F. Supp. 431 (N.D. Ohio 1990), *aff'd re refusal to allow amendment to include federal civil rights claims*, 932 F.2d 495 (6th Cir. 1991)........................12, 14

*Burnett v. Twentieth Century Fox*,
491 F. Supp. 962 (C.D. Cal. 2007)........................4

*Caldarola v. County of Westchester*,
142 F. Supp. 2d 431 (S.D.N.Y. 2001), *aff'd* 219 F.3d ........................16

DAVIS WRIGHT TREMAINE LLP

*Caldarola v. County of Westchester*,
   343 F.3d 570 (2d Cir. 2003) ........................................................................ passim

*Cameron v. Buether*,
   2011 U.S. Dist. LEXIS 21833 (S.D. Cal. March 4, 2011) ..................................... 22

*Capcom v. The MKR Group*,
   2008 U.S. Dist. LEXIS 83836 ........................................................................ 4

*Chism v. Woodford*,
   2008 U.S. Dist. LEXIS 63642 (N.D. Cal. July 22, 2008) ..................................... 12

*Cowras v. Hard Copy*,
   1997 U.S. Dist LEXIS 23514 (D. Conn. Sept. 29, 1997) ..................................... 15

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975) ........................................................................ 6

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) ........................................................ 23, 24

*Desnick v. American Broadcasting Cos.*,
   44 F.3d 1345 (7th Cir. 1995) ........................................................ 10, 11

*Detroit Free Press, Inc. v. Department of Justice*,
   73 F.3d 93 (6th Cir. 1996) ........................................................ 17

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ........................................................ 3

*Dorsey v. National Enquirer*,
   973 F.2d 1431 (9th Cir. 1992) ........................................................ 4

*Eidson v. Olathe*,
   1992 U.S. Dist. LEXIS 17179 (D. Kansas October 27, 1992) ........................... 14

*Ennis v. City of Daly City*,
   2011 U.S. Dist. LEXIS 15824 (N.D. Cal. Feb. 15, 2011) ............................... 21

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
   12 F. Supp.2d 1068 (C.D. Cal. 1998) ........................................................ 7

*Fleming v. Dep't of Public Safety*,
   837 F.2d 401 (9th Cir. 1988), *cert denied*, 488 U.S. 889 (1988) ..................... 8, 12

*Florida Star v. B.J.F.*,
   491 U.S. 524 (1989) ........................................................ 6, 23

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ........................................................ 3

DAVIS WRIGHT TREMAINE LLP

iii

DAVIS WRIGHT TREMAINE LLP

*Food Lion v. Capital Cities/ABC,*
 194 F.3d 505 (4th Cir. 1999)............................................................................8

*Food Lion v. Capital Cities/ABC, Inc.,*
 964 F. Supp. 956 (M.D.N.C. 1997).................................................................5

*Forsher v. Bugliosi,*
 26 Cal.3d 792 (1980)........................................................................................6

*Forster v. County of Santa Barbara,*
 896 F.2d 1146 (9th Cir. 1990)........................................................................19

*Franchise Realty Interstate Corp. v. San Francisco Local Jt. Exec. Bd. of Culinary
 Workers,*
 542 F.2d 1076 (9th Cir. 1976)..........................................................................3

*General Motors Corp. v. New A.C. Chevrolet,*
 263 F.3d 296 (3d Cir. 2001).............................................................................3

*Graham v. Connor,*
 490 U.S. 386 (1989).......................................................................................21

*Hinz v. City of Everett,*
 2010 U.S. Dist. LEXIS 80646 (W.D. Wash. Aug. 10, 2010) ........................21

*Hofmann Co. v. E.I. Du Pont de Nemours & Co.,*
 202 Cal. App.3d 390 (1988).............................................................................5

*Hustler v. Falwell,*
 485 U.S. 46 (1988)...................................................................................1, 7, 9

*Ileto v. Glock,*
 349 F.3d 1191 (9th Cir. 2003)..........................................................................3

*In re Silicon Graphics Securities Litig.,*
 183 F.3d 970 (9th Cir. 1999)............................................................................4

*In re Syntex Corp. Sec. Litig.,*
 95 F.3d 922 (9th Cir. 1996)..............................................................................3

*Isuzu Motors Ltd. v. Consumers Union of United States,*
 12 F. Supp. 2d 1035 (C.D. Cal. 1998).............................................................5

*Johnson v. Barker,*
 799 F.2d 1396 (9th Cir. 1996)........................................................................12

*Johnson v. City of Bellevue,*
 2006 U.S. Dist. LEXIS 6023 (W.D. Wash. Jan. 30, 2006)............................22

DAVIS WRIGHT TREMAINE LLP

*Johnson v. Solano County Sheriff's Dep't*,
   2009 U.S. Dist. LEXIS 60130 (E.D. Cal. July 13, 2009)..........................................22

*Kahn v. Bower*,
   232 Cal.App.3d 1599 (1991)...............................................................................8

*Katz v. United States*,
   389 U.S. 347 (1967) (Harlan, J., concurring).....................................................19

*Landmark Commc'ns v. Virginia*,
   435 U.S. 829 (1978)........................................................................................6, 23

*Lauro v. Charles*,
   219 F.3d 202 (2d Cir. 2000)...........................................................................16, 17

*McCarthy v. Mayo*,
   827 F.2d 1310 (9th Cir. 1987)..............................................................................12

*Metabolife Int'l v. Wornick*,
   213 F. Supp. 2d 1220 (S.D. Cal. 2002)...................................................................4

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986)..............................................................................4, 5

*Mimms v. Philadelphia Newspapers*,
   352 F. Supp. 862 (E.D. Pa. 1972).......................................................................14

*Minnesota v. Carter*,
   525 U.S. 83 (1998)...............................................................................................18

*Mitchel v. City of Santa Rosa*,
   695 F. Supp. 2d 1001 (N.D. Cal. 2010)................................................................12

*Moldea v. New York Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994)................................................................................8

*Moncrief v. Hanton*,
   10 Med.L.Rptr. 1620 (N.D. Ohio 1984).........................................................12, 13

*Morgan v. City of Pleasant Hill*,
   2005 U.S. Dist. LEXIS 40382 (N.D. Cal. Dec. 16, 2005)......................................22

*Nadell v. Las Vegas Metro. Police Dep't*,
   268 F.3d 924 (9th Cir. 2001)...............................................................................18

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964).............................................................................................7

*Ortega v. City of Oakland*,
   2008 U.S. Dist. LEXIS 85183 (N.D. Cal. October 8, 2008)...................................18

v

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998), superseded ............................................................ 4

*Paul v. Davis*,
   424 U.S. 693 (1976) ................................................................................. 2, 12, 13

*Philadelphia Newspapers v. Hepps*,
   475 U.S. 767 (1986) ................................................................................... 10

*Rakas v. Illinois*,
   439 U.S. 128 (1978) ................................................................................ 18, 19

*Reader's Digest Ass'n v. Superior Court*,
   37 Cal.3d 244 (1984) ..................................................................................... 8

*Reilly v. Leonard*,
   459 F. Supp. 291 (D. Conn. 1978) .................................................................. 14

*Reusser v. Wachovia Bank*,
   2006 U.S. Dist. LEXIS 55999 ...................................................................... 21

*Rosenberg v. Martin*,
   478 F.2d 520 (2d Cir. 1973) ..................................................................... 12, 14

*Ross v. United States Bank Nat'l Ass'n*,
   542 F.Supp.2d 1014 (N.D. Cal. 2008) ............................................................. 3

*Schwartz v. Town of Plainville*,
   483 F. Supp. 2d 192 (D. Conn. 2007) ........................................................... 21

*Schweitzer v. Scott*,
   469 F. Supp. 1017 (C.D. Cal. 1979) ............................................................... 5

*Smith v. Daily Mail Publ'g Co.*,
   443 U.S. 97 (1979) .................................................................................. 6, 23

*Smith v. Maryland*,
   442 U.S. 735 (1979) ..................................................................................... 16

*Snyder v. Phelps*,
   – U.S. –, 131 S.Ct. 1207, 179 L. Ed. 2d 172 (2011) ................................... passim

*Taus v. Loftus*,
   40 Cal.4th 683 (2007) .................................................................................... 4

*Teaze v. City of San Diego*,
   2008 U.S. Dist. LEXIS 55352 (S.D. Cal. July 15, 2008) .................................. 22

*Tuttelman v. City of San Jose*,
   2011 U.S. App. LEXIS 4993 (9th Cir. March 11, 2011) .................................. 22

DAVIS WRIGHT TREMAINE LLP

*United States ex rel Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999)..................................................................................... 4

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo*,
   971 F.2d 244 (9th Cir. 1992)..................................................................................... 5

*United States v. Borowy*,
   595 F.3d 1045 (9th Cir. 2010)................................................................................. 16

*United States v. Nerber*,
   222 F.3d 597 (9th Cir. 2000)................................................................................... 19

*United States v. White*,
   401 U.S. 745 (1971) ............................................................................................... 19

*Vogel v. Felice*,
   127 Cal.App.4th 1006 (2005)..................................................................................... 8

*Winter v. DC Comics*,
   30 Cal.4th 881 (2003)................................................................................................ 4

*Zerilli v. Evening News*,
   628 F.2d 217 (D.C. Cir. 1980) .................................................................................. 8

**STATUTES**

42 U.S.C. § 1983 ............................................................................................... passim

California Code of Civil Procedure § 425.16.................................................................. 4

California Penal Code § 288(a) .................................................................................. 21

California Penal Code § 664 ...................................................................................... 21

**RULES**

Federal Rule of Civil Procedure 12(c) ......................................................................... 3

Federal Rule of Evidence 201 ...................................................................................... 5

Rule 12(b)(6) ............................................................................................................... 3

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment......................................................... passim

United States Constitution, Fourteenth Amendment.............................................. 2, 23

United States Constitution, Fourth Amendment ..................................................... passim

DAVIS WRIGHT TREMAINE LLP

TO PLAINTIFF ANURAG TIWARI AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **August 26, 2011, at 1:30 p.m.**, or as soon thereafter as counsel may be heard in the Courtroom 5 of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant NBCUniversal Media, LLC ("NBCUniversal") (formerly known as "NBC Universal, Inc.") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff's 42 U.S.C. Section 1983 claim.

This Motion is made on the following grounds:

1.     Plaintiff's Section 1983 claim is barred by the First Amendment, which prohibits Plaintiff from recovering broadcast damages where Plaintiff does not – and cannot – allege – that NBCUniversal broadcast any false statements of fact about him regarding his involvement in a matter of considerable public concern.  NBCUniversal's news broadcast truthfully showed film of Plaintiff's appearance and arrest at a stranger's home in Petaluma where he had been told a 13-year-old girl would be present after he had engaged in sexually explicit chats with a person who claimed to be 13 and staying at the Petaluma house.

2.     Plaintiff's Section 1983 claim independently is barred because NBCUniversal did not deprive Plaintiff of any cognizable constitutional rights.

a.     Plaintiff fails to identify the supposedly invaded constitutional privacy right, and courts have made clear that Plaintiff may not premise a Section 1983 claim on unwanted publicity, as the constitutional privacy right does not encompass that interest.

b.     Plaintiff cannot base a Section 1983 claim on violation of Fourth Amendment seizure rights because Plaintiff had no objectively reasonable expectation of privacy in a stranger's home or at the Petaluma airport.

c.     Placing Plaintiff in handcuffs and arresting him with guns drawn was not an unreasonable use of force, and Plaintiff has failed to allege actual facts establishing that NBCUniversal had anything to do with the way he was arrested or detained.

1

1      3.      Plaintiff cannot base a Section 1983 claim on a Fourteenth Amendment pretrial

2  punishment claim because NBCUniversal's news reporting had a legitimate government purpose,

3  informing the public about efforts to enforce a law that Plaintiff was arrested for violating.

4      For each of these reasons, Plaintiff's Section 1983 claim should be dismissed with

5  prejudice.

6      DATED this 22nd day of July 2011.        DAVIS WRIGHT TREMAINE LLP

7                                              By: /s/ Thomas R. Burke
8                                                   THOMAS R. BURKE
                                               Attorneys for Defendant NBCUNIVERSAL
9                                              MEDIA, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NBCUNIVERSAL'S MOTION TO DISMISS SECTION 1983 CLAIM
Case No.: CGC-10-506530                                              DWT 17565950v3 0020040-000084

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.   INTRODUCTION & FACTUAL BACKGROUND**

In an attempt to evade California's anti-SLAPP statute, Plaintiff Anurag Tiwari has brought a 42 U.S.C. Section 1983 claim against NBCUniversal arising from his appearance in an October 2006 episode of *Dateline NBC: To Catch A Predator. See* Docket No. 75.[1]  Plaintiff's lawsuit, including the Section 1983 claim, is predicated on establishing broadcast damages. *Plaintiff claims that the harm he suffered was loss of his job as a software engineer not because of his arrest, but because of the broadcast some two months later. See* 3d Amended Compl. ¶¶ 7, 41. NBCUniversal's news report accurately showed Plaintiff arriving at a stranger's house in Petaluma to meet a young female after he had engaged in sexually explicit Internet chats with a person who claimed to be a 13-year-old girl and promptly being arrested by Petaluma Police for this criminal conduct.  Despite alleging injury flowing from the broadcast, Plaintiff makes no effort to satisfy the long-standing First Amendment requirement that he plead and prove the broadcast on this serious matter of public concern was false.  His Section 1983 claim is therefore barred as a matter of law by the First Amendment.

As the Supreme Court recently reaffirmed, plaintiffs like Mr. Tiwari may not recover defamation-type damages for speech on matters of public concern that are not capable of being proven false such as the broadcast in question, even where the speech may be deemed "outrageous" or offensive. *See Snyder v. Phelps*, – U.S. –, 131 S.Ct. 1207, 179 L. Ed. 2d 172 (2011).  The Court also reiterated the constitutional rule that regardless of how the plaintiff labels his or her claims, he or she must meet the heightened First Amendment requirements of defamation law when his or her claims implicate damages from the speech at issue. *Id. See also Hustler v. Falwell*, 485 U.S. 46, 50, 54-57 (1988).  Here, Plaintiff does not and cannot provide any facts showing the broadcast was false, nor has he pleaded facts supporting deprivation of any cognizable constitutional rights by NBCUniversal, which means that Plaintiff is barred from recovering any damages for his Section 1983 claim. *See Section 3(A), infra.*

---

[1] Plaintiff lodged the DVD of the *Dateline NBC: To Catch A Predator* episode at issue here. Docket No. 75.

DAVIS WRIGHT TREMAINE LLP

NBCUNIVERSAL'S SPECIAL MOTION TO STRIKE
Case No.: C08-3988 MHP
DWT 17565950v3 0020040-000084

Plaintiff's Section 1983 claim also suffers substantively from several fatal deficiencies. *First*, Plaintiff claims violation of the constitutional right of privacy, but the constitutional right of privacy protects matters relating to marriage, procreation, contraception, and the like, and does not extend to freedom from unwanted publicity. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Claims for reputational injury and invasion of privacy/intrusion such as those pleaded here are properly brought in state court and not through 42 U.S.C. Section 1983 actions. *See Section* 3(B)(1), *infra*.

*Second*, Plaintiff cannot establish a Fourth Amendment seizure violation stemming from his arrest because he cannot establish a reasonable expectation of privacy in a stranger's home (where he was arrested for criminal conduct) or in the Petaluma Airport pre-booking area, places where he did not exercise "dominion and control." *See Section* 3(B)(2), *infra*.

*Third*, Plaintiff cannot premise his Section 1983 claim against NBCUniversal on allegations of excessive force, such as arresting Plaintiff with guns drawn and placing him in handcuffs, when the law enforcement operation order referenced by Plaintiff in his Complaint specifically stated that NBCUniversal personnel would not participate or be involved in the decision of the methods to use in arresting Plaintiff and the other suspected criminals. *See* Compl. ¶¶ 25-28, 58-59; Docket No. 4 (Operations Order). Plaintiff also cannot establish that arresting him with guns drawn and placing him in handcuffs constituted excessive force, given that Plaintiff was suspected of committing felonies with a minor under the age of 14 and was rushing out of the house after being questioned by NBC reporter Chris Hansen. *See* Section 3(B)(3), *infra*.

Finally, Plaintiff has not pleaded a viable Fourteenth Amendment violation against NBCUniversal for "pre-trial punishment" as the basis of his Section 1983 claim because the Ninth Circuit has stated that one-time filming of arrests does not constitute pre-trial punishment, and imposing such "punishment" liability on a news media organization would punish the media organization for its truthful reporting, which is prohibited under the First Amendment. *See* Section 3(B)(4), *infra*.

For all these reasons, NBCUniversal respectfully requests that the Court grant this Motion, and issue an order dismissing Plaintiff's Section 1983 claim with prejudice.

2

## 2.   THE ISSUES IN THIS MOTION CAN AND SHOULD BE DECIDED AT THE PLEADING STAGE, PARTICULARLY GIVEN THE IMPACT ON NBCUNIVERSAL'S FIRST AMENDMENT RIGHTS.

Federal Rule of Civil Procedure 12(c), a motion for judgment on the pleadings, like its counterpart, Rule 12(b)(6), tests the legal sufficiency of the plaintiff's claims. Dismissal is warranted if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see also Ross v. United States Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1023 (N.D. Cal. 2008) (*Twombly* standard applies to Rule 12(c) motions). In making this determination, the court is not required to construe "conclusory allegations of law and unwarranted inferences" in favor of the nonmoving party. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996); *Ileto v. Glock*, 349 F.3d 1191, 1200 (9th Cir. 2003) (a court should "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations"); *see also General Motors Corp. v. New A.C. Chevrolet*, 263 F.3d 296, 333 (3d Cir. 2001) ("minimalist, conclusory allegations … do not suffice to cross the 12(b)(6) threshold"). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556).

Stricter standards also must be applied at the pleading stage to claims, like plaintiff's Section 1983 claim here, that arise from the exercise of First Amendment rights. As the United States Supreme Court has noted, "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Accordingly, the Ninth Circuit has recognized the need for more specific pleading in cases that threaten to chill First Amendment rights, and has affirmed the dismissal of claims that fail to meet this exacting standard. *See, e.g., Franchise Realty Interstate Corp. v. San Francisco Local Jt. Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1083 (9th Cir. 1976) (in cases involving First Amendment rights, "the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required"); *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir.

DAVIS WRIGHT TREMAINE LLP

1   2002) (same); *Barry v. Time*, 584 F. Supp. 1110, 1121 (N.D. Cal. 1984) (noting "the potential

2   chilling effects of harassing litigation concerning the first amendment," and granting motion to

3   dismiss on grounds that allegations of actual malice were not plead "with sufficient specificity").[2]

4        In ruling on a motion to dismiss, this Court may consider not only the plaintiff's

5   allegations, but also materials on which the plaintiff's complaint necessarily relies, even if not

6   attached to the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by

7   statute on other grounds, *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *see also In*

8   *re Silicon Graphics Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (under federal rules, court

9   may consider documents "whose contents are alleged in the complaint and whose authenticity no

10  party questions" even where plaintiff does not attach the documents to the complaint); *MGIC*

11  *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (court may rely on materials that are

12  properly the subject of judicial notice). For example, in *Burnett v. Twentieth Century Fox*, 491 F.

13  Supp. 2d 962, 973 (C.D. Cal. 2007), the court granted defendants' motion to dismiss plaintiff's

14  Lanham Act claims after reviewing the television program that formed the basis of lawsuit. *See*

15  *also Capcom v. The MKR Group*, 2008 U.S. Dist. LEXIS 83836, at *14-*15 (N.D. Cal. 2008

16  (viewing video game that was repeatedly referred to in Lanham Act complaint as part of granting

17  motion to dismiss on First Amendment grounds); *Isuzu Motors Ltd. v. Consumers Union of United*

18

19  [2] Where, as here, a defendant's First Amendment rights are implicated, dismissal at the pleading
    stage is favored. *See, e.g., Dorsey v. National Enquirer*, 973 F.2d 1431, 1435 (9th Cir. 1992)

20  ("speedy resolution" at the "earliest stage" of a case is essential for cases involving First
    Amendment to avoid chilling expression); *Winter v. DC Comics*, 30 Cal.4th 881, 891 (2003)

21  (same). Moreover, although the Ninth Circuit, with virtually no discussion, stated in *United States*
    *ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999), that the

22  anti-SLAPP statute does not apply to a federal question claim, the principles behind the statute
    still have resonance because they are a means of protecting Californians' free speech rights as

23  guaranteed by the federal and California constitutions. Undeniably, Plaintiff's Complaint targets
    NBCUniversal for engaging in constitutionally-protected free speech that showed Plaintiff and

24  other adults engaging in sexually explicit chats with persons they had been told were 13 and
    seeking sexual encounters with that young person. So that truthful speech on matters of public

25  interest (here, the crime of adults soliciting children on the Internet for sex) may not be chilled,
    Section 425.16 of the California Code of Civil Procedure provides for quick disposal of those

26  claims that do not "demonstrate[] a probability of prevailing on the claim," as well as the awarding
    of attorneys' fees and costs to the targeted defendant. *See Taus v. Loftus*, 40 Cal.4th 683 (2007);

27  *Metabolife Int'l v. Wornick*, 213 F. Supp. 2d 1220, 1228 (S.D. Cal. 2002). While the anti-SLAPP
    statute may not apply to plaintiff's Section 1983 claim, the Court should still use existing federal

28  law and procedures to vindicate the statute's core values of early dismissal of non-meritorious
    lawsuits targeting speech.

DAVIS WRIGHT TREMAINE LLP

1   *States*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998) (taking judicial notice under Federal Rule of

2   Evidence 201 of "publication of various newspapers and television programs"); *Food Lion v.*

3   *Capital Cities/ABC, Inc.*, 964 F. Supp. 956, 964 n.5 (M.D.N.C. 1997) (taking judicial notice of a

4   report that aired on television newsmagazine "[b]ecause [the broadcast] was publicly disseminated

5   [and was thus] 'capable of accurate and ready determination by resort to sources whose accuracy

6   cannot reasonably be questioned'"); *Hofmann Co. v. E.I. Du Pont de Nemours & Co.*, 202 Cal.

7   App.3d 390, 395 n.3 (1988) (judicial notice of newspaper article that was basis of plaintiff's

8   defamation claim).[3]

9       Here, in ruling on the Motion, the Court may consider NBCUniversal's news report

10  repeatedly referred to by Plaintiff in his Complaint, and may consider the official records also

11  referenced by Plaintiff in his Complaint.

**3.   PLAINTIFF CANNOT STATE A COGNIZABLE SECTION 1983 CLAIM AGAINST NBCUNIVERSAL.**

**A.   The First Amendment Protects NBCUniversal From Being Punished For Truthfully Broadcasting Petaluma Police's Arrest of Plaintiff.**

15      The First Amendment forbids Plaintiff from bringing a claim under Section 1983 that is

16  premised on broadcast damages allegedly incurred from NBCUniversal's production and truthful

17  broadcast of the *Dateline NBC: To Catch A Predator* episode. In *Snyder v. Phelps*, 131 S.Ct. at

18  1215, 1219, the United States Supreme Court held that the Free Speech Clause of the First

19  Amendment prohibits holding defendants liable for speech that is not capable of being proven

20  false on matters of public concern, even where the speech may be deemed "outrageous" or

21  offensive.  The Court explained that "[s]peech deals with matters of public concern when it can

22  'be fairly characterized as relating to any matter of political, social, or other concern to the

23  community,' or when it 'is a subject of legitimate news interest; that is, a subject of general

24  interest and of value and concern to the public.'" *Id.* at 1216 (internal citations omitted).  Whether

25  [3] The Court also can take judicial notice of court records and other official documents. *See MGIC*
    *Indem. Corp. v. Weisman*, 803 F. 2d at 504 (taking judicial notice of a motion to dismiss and
26  memorandum of points and authorities filed in another action); *United States ex rel. Robinson*
    *Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of
27  proceedings in other courts, both within and without the federal judicial system, if those
    proceedings have a direct relation to matters at issue") (citation and internal quotes omitted);
28  *Schweitzer v. Scott*, 469 F. Supp. 1017, 1020 (C.D. Cal. 1979) (taking judicial notice of court
    records filed in other civil actions).

DAVIS WRIGHT TREMAINE LLP

1    a statement is "inappropriate or controversial" is "irrelevant to the question of whether it deals

2    with a matter of public concern." *Id.* Thus, the Westboro Baptist Church's standing outside of a

3    military funeral with signs stating "Thank God for Dead Soldiers," "Priests Rape Boys," and

4    "You're Going to Hell" could not give rise to a cognizable IIED claim brought by the decedent's

5    father, because the Court judged this speech to be of public concern – namely, dealing (in a coarse

6    way) with "the political and moral conduct of the United States and its citizens, … homosexuality

7    in the military, and scandals involving the Catholic clergy." *Id.*. Because "in public debate [we]

8    must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space'

9    to the freedoms protected by the First Amendment," the Westboro Church's statements were

10   entitled to full First Amendment protection that "cannot be overcome by a jury finding that the

11   picketing was outrageous." *Id.* at 1219.[4]

12           Here, the NBCUniversal news report in which Plaintiff appeared involved a matter of great

13   public concern – adults soliciting young girls and boys on the Internet for sexually explicit chats

14   and for real-life encounters. Many courts have found a public interest in learning about crimes

15   such as these involving our children. *See, e.g.*, *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469,

16   475 (1975) ("[t]he commission of a crime, prosecutions resulting therefrom, and judicial

17   proceedings arising from the prosecutions are events of legitimate concern to the public"); *Forsher

18   v. Bugliosi*, 26 Cal.3d 792, 809 (1980) (same); *Bradbury v. Superior Court*, 49 Cal.App.4th 1108,

19   1116-1117 (1996) (investigation of shooting was matter of public interest under California's anti-

20   SLAPP statute). Here Plaintiff does not – and cannot – allege that NBCUniversal's news report

21   was false – but only that the broadcast's truthful depiction of his criminal involvement in this

22   matter of public concern was humiliating and caused him to lose his job. NBCUniversal's news

23   _____

24   [4] *Snyder v. Phelps* is consistent with the many Supreme Court decisions proscribing punishment of
     the press for publishing speech about matters of public concern. *See, e.g.*, *Bartnicki v. Vopper*,
     532 U.S. 514, 535 (2001) (concluding information illegally obtained by third party and given to

25   press does not remove "First Amendment shield" from speech about a matter of public concern);
     *Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989) (holding newspaper may only face punishment

26   for publication of truthful, lawful information if punishment is narrowly tailored to "state interest
     of the highest order"); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 105-106 (1979) (holding state

27   may not prosecute newspaper for identifying juvenile suspect in homicide case if information has
     been made publicly available by the government); *Landmark Commc'ns v. Virginia*, 435 U.S. 829,

28   845 (1978) (holding state may not fine newspaper for accurately reporting that judge was under
     investigation).

DAVIS WRIGHT TREMAINE LLP

1   report is absolutely privileged under the First Amendment, irrespective of whether Plaintiff

2   believes the content of the broadcast was "outrageous" (and whether society is willing to endorse

3   Plaintiff's self-serving depiction of the broadcast in such terms). *See Snyder v. Phelps*, 131 S.Ct.

4   at 1216-1219.

5          The Supreme Court's holding in *Snyder v. Phelps* reaffirmed four decades of Supreme

6   Court rulings that First Amendment protection for speech applies regardless of the labels given to

7   causes of action. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964); *see also Bose Corp.*

8   *v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) (treating the fact that the case

9   before it was one of product disparagement rather than defamation as *immaterial* and discussing

10  the importance of "independent judicial review"). In *Hustler v. Falwell*, 485 U.S. at 54-57, the

11  Supreme Court held that the First Amendment barred not only the Reverend Jerry Falwell's

12  defamation claim arising from a satirical feature in *Hustler* magazine that depicted Falwell as

13  engaged in an incestuous relationship, but also his intentional infliction of emotional distress claim

14  arising from the same publication. *Falwell* and *Snyder* stand for the now well-established

15  proposition, fatal to Mr. Tiwari's lawsuit, that courts may not permit Plaintiff, through tendentious

16  pleading, to invoke other claims as a vehicle for "end-running other requirements of defamation

17  law." *Id.*

18         Federal and state courts in California have made clear that constitutional protections "are

19  not peculiar to [defamation] actions but apply to all claims *whose gravamen is the alleged*

20  *injurious falsehood of a statement*." *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042-43

21  (1986) (emphasis added). In *Blatty*, the Court recognized that if the constitutional limitations

22  protecting free speech were not broadly applied to different causes of action, litigants would plead

23  claims other than defamation to avoid the First Amendment restrictions, thereby "frustrat[ing]

24  the[] underlying purpose" of the constitutional protections. Consequently, courts have not

25  hesitated to dismiss complaints, like Mr. Tiwari's, that target free speech and seek to use "creative

26  pleading" to "render[] nugatory the First Amendment limitations placed on litigation against

27  speech." *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp.2d 1068, 1082

28  (C.D. Cal. 1998). *See also Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244, 265 (1984)

DAVIS WRIGHT TREMAINE LLP

7

1   (declaring that "liability cannot be imposed on any theory for what has been determined to be a

2   constitutionally protected publication," and thus dismissing plaintiff's IIED claim "for same

3   reasons as [plaintiff's] causes of action for defamation and privacy"); *Vogel v. Felice*, 127

4   Cal.App.4th 1006, 1018 (2005) (plaintiffs' failure to plead the elements of a viable defamation

5   claim "constitutes a fatal defect as to all of their [other tort] claims hav[ing] as their gravamen the

6   alleged injurious falsehood of a statement"); *Moldea v. New York Times Co.*, 22 F.3d 310, 319-20

7   (D.C. Cir. 1994) ("a plaintiff may not use related causes of action to avoid the constitutional

8   requisites of a defamation"); *Kahn v. Bower*, 232 Cal.App.3d 1599, 1615 (1991) (rejecting

9   negligence and infliction of emotional distress claims pleaded by plaintiff based on *Blatty* because

10  social work plaintiff's claim truly was based on alleged injurious falsehood of published

11  statements that she was hostile to children and incompetent).  In fact, courts specifically have

12  found that Section 1983 and similar claims premised on damages from the publication are

13  impermissibly duplicative of state-law defamation claims. *See Fleming v. Dep't of Public Safety*,

14  837 F.2d 401, 409 (9th Cir. 1988), *cert denied*, 488 U.S. 889 (1988) (an action for damage to

15  reputation "lies … in the tort of defamation, and not in section 1983"); *Zerilli v. Evening News*,

16  628 F.2d 217, 224 (D.C. Cir. 1980) (refusing to hold newspaper liable in damages for "uncovering

17  and publishing information that it deems newsworthy, and noting that the First Amendment may

18  be implicated in holding a newspaper liable in Section 1983 or *Bivens* contexts); *Bradbury v.*

19  *Superior Court*, 49 Cal.App.4th at 1118 (striking Section 1983 claim from complaint, and finding

20  that "[a]n alleged injury to reputation alone does not state a civil rights claim").

21          The Fourth Circuit's decision in *Food Lion v. Capital Cities/ABC*, 194 F.3d 505 (4th Cir.

22  1999), is particularly instructive.  There, Food Lion did not sue for defamation but instead styled

23  its claims as ones for nonreputational torts such as fraud and trespass arising from ABC's hidden-

24  camera investigation of poor food handling practices at the supermarket.  The Fourth Circuit stated

25  that it was an "overriding (and settled) First Amendment principle" that plaintiffs like Food Lion

26  may not "avoid the First Amendment limitations on defamation claims by seeking publication

27  damages under nonreputational tort claims…." *Id.* at 521-522.  The court concluded that Food

28

DAVIS WRIGHT TREMAINE LLP

1    Lion's labeling of its claims as being other torts than defamation constitutes an "end-run around

2    First Amendment stricture [that] is foreclosed by *Hustler*." *Id.* (citing *Hustler*, 485 U.S. at 52-53).

3            Here as in the above cases, Plaintiff impermissibly seeks to recover broadcast-based

4    reputational damages using a Section 1983 claim (and a rebadged state tort law intentional

5    infliction of emotional distress claim – *see* concurrently filed Special Motion To Strike at 8-14).

6    In paragraph 7 of his latest Third Amended Complaint, Plaintiff affirmatively declares that he is

7    seeking to recover damages for being "placed on administrative leave from his employment as a

8    software engineer and forced to resign shortly thereafter" ***not*** from the recording of his arrest, but

9    "***as a direct result of the broadcast***." (Emphasis added.) *See also* 3d Amended Compl. ¶ 41

10   (same). Similarly, in paragraph 40 of the Third Amended Complaint, Plaintiff complains about

11   NBCUniversal's editorial choices in the broadcast, claiming that the editing of the broadcast was

12   designed "to enhance the humiliating and dramatic effect of the program and connote guilt."

13   Although Plaintiff goes to great lengths to excise the word "reputation" from his Third Amended

14   Complaint in connection with the Section 1983 and intentional infliction of emotional distress

15   claims,[5] this Court should not ignore the above-identified sections of the Third Amended

16   Complaint and that for years, Plaintiff has consistently and repeatedly alluded to his lost reputation

17   damages in earlier complaints. For example, Plaintiff's First Amended Complaint contained **at**

18   **least 12** paragraphs in which Plaintiff directly referenced "***damage to his good name and***

19   ***reputation***," including when discussing the basis for his Section 1983 claim. *See* 1st Amended

20   Compl. ¶¶ 60, 71, 73, 84, 92, 102, 110, 111, 120, 127, 138, 148 (emphasis added). Plaintiff's

21   much shorter Second Amended Complaint also premised his then-two claims on "***damage to his***

22   ***good name and reputation***" (*see* 2d Amended Compl. ¶¶ 60, 68 – emphasis added), and included

23   _____

24   [5] Plaintiff uses linguistic gymnastics to try to avoid saying the words "reputation damages," but it
     is obvious that Plaintiff is talking about purported damage to his reputation when Plaintiff
     discusses supposed "scenarios in which Plaintiff was displayed to the world, against his will, in

25   handcuffs and in a posture connoting guilt" (3d Amended Compl. ¶ 39), "actions [that] … visually
     depict Plaintiff in a manner that connotes guilt [and that] were performed and undertaken for the

26   purpose of maximizing the entertainment … value of … NBC's Petaluma-Catch program" (*id.* ¶
     64), and similar statements, even labeling the section in which he claims he lost his job from the

27   broadcast "NBC Aired Catch-Petaluma on National Television" (*see* page 9 of 3d Amended
     Compl.). After all, any "humiliation" or "connoting [of] guilt" only can occur if others have seen

28   the depiction about which Plaintiff is complaining (in other words, these purported damages are
     reliant on the show being broadcast).

DAVIS WRIGHT TREMAINE LLP

9

similar complaints that NBCUniversal "commercially exploit[ed] the recording" (2d Amended

Compl. ¶ 61), that the "visual images were used to make a commercial TV program (2d Amended

Compl. ¶ 55), that "the continue[d] display of aforesaid images and sound-bites on the internet and

on TV" violated his constitutional rights (2d Amended Compl. ¶ 56), and that "the broadcast on

TV and on the internet" caused him "emotional distress" (2d Amended Compl. ¶ 68).

These examples from Plaintiff's various complaints – including his present complaint –

demonstrate that Plaintiff is seeking defamation-type damages arising from NBCUniversal's

broadcast. Yet, Plaintiff makes no effort to satisfy the heightened requirements for claims that

rely on defamation-based damages such as the loss of a job purportedly from a broadcast. *See* 3d

Amended Compl. ¶¶ 7, 41. Importantly, to support defamation-type damages, Plaintiff carries the

burden of showing that NBCUniversal's broadcast was false. *Philadelphia Newspapers v. Hepps*,

475 U.S. 767, 777 (1986). **In this case, however, Plaintiff does not make any falsity**

**allegations in his Third Amended Complaint concerning the Section 1983 claim.** Nor can

Plaintiff possibly show that NBCUniversal's broadcast is false when Plaintiff *admits* that the

broadcast included film of him (1) arriving at the house in Petaluma to meet a purported 13-year-

old girl after he had engaged in sexually explicit Internet chats with a person who claimed to be a

13-year-old girl and (2) being arrested for this criminal conduct. *See* Compl. ¶¶ 30-33. Plaintiff

may not like that he was shown on television engaging in this embarrassing and criminal conduct

for which he was arrested, prosecuted, and convicted, but the First Amendment absolutely bars

Plaintiff from recovering damages arising from his truthful depiction on the broadcast.

Plaintiff's last-ditch attempt to shift the focus from the broadcast to the production of the

broadcast in the Third Amended Complaint is of no moment, as the courts have made clear that

such a false distinction between these two intertwined activities is untenable. In *Desnick v.*

*American Broadcasting Cos.*, 44 F.3d 1345 (7th Cir. 1995), Plaintiffs sought to attack the

"tabloid" "methods" used to create a broadcast segment of *20/20.* The plaintiffs claimed a hidden

camera investigation of cataract surgeons invaded their privacy and constituted fraud, trespass, and

violation of electronic surveillance statutes, but the Seventh Circuit rejected the claimed

distinction between production and broadcast activities and disposed of these claims for failure to

DAVIS WRIGHT TREMAINE LLP

1  meet the heightened First Amendment requirements of defamation law.  The Seventh Circuit

2  stated the following on this issue:

> One further point about the claims concerning the making of the
> program segment, as distinct from the content of the segment itself,
> needs to be made.  The Supreme Court in the name of the First
> Amendment has hedged about defamation suits, even when not
> brought by public figures, with many safeguards designed to protect
> a vigorous market in ideas and opinions.  Today's 'tabloid' style
> investigative television reportage, conducted by networks desperate
> for viewers in an increasingly competitive television market,
> constitutes—although it is often shrill, one-sided, and offensive, and
> sometimes defamatory—an important part of that market.  It is
> entitled to all the safeguards with which the Supreme Court has
> surrounded liability for defamation.  ***And it is entitled to them
> regardless of the name of the tort, and, we add, regardless of
> whether the tort suit is aimed at the content of the broadcast or the
> production of the broadcast.***  If the broadcast itself does not contain
> actionable defamation, and no established rights are invaded in the
> process of creating it (for the media have no general immunity from
> tort or contract liability), then the target has no legal remedy even if
> the investigatory tactics used by the network are surreptitious,
> confrontational, unscrupulous, and ungentlemanly.

*Id.* at 1355 (internal citations omitted) (emphasis added).

      Following *Desnick* and the other cases, the First Amendment prevents Plaintiff from

recovering broadcast damages based on a Section 1983 claim because there are no allegations that

the broadcast was false.  Moreover, the production of the broadcast is also privileged under the

First Amendment because even if the newsgathering and reporting conducted by NBCUniversal

was surreptitious and confrontational, it was not illegal or tortious to use hidden cameras in places

where Plaintiff had no reasonable expectation of privacy, nor was it illegal or tortious for

NBCUniversal to enter into a consulting agreement as part of newsgathering.  NBCUniversal

filmed a real-life arrest of Plaintiff as it transpired; it was not a staged recreation of events, as

Plaintiff wrongly contends (3d Amended Compl. ¶¶ 3, 39, 73).  Moreover, arresting Plaintiff with

guns drawn was not excessive force, but in fact was prudent given that Plaintiff had rushed out,

and the police knew nothing about how he might react.  *See* Docket No. 75 (Broadcast).

NBCUniversal also did not have any control or direction over how the Petaluma Police

Department conducted the arrest – the decision of how, when and what methods to use in arresting

Plaintiff were exclusively the Petaluma Police Department's.  Docket No. 4 (Operations Protocol).

DAVIS WRIGHT TREMAINE LLP

NBCUNIVERSAL'S MOTION TO DISMISS SECTION 1983 CLAIM
Case No.: C08-3988 MHP
DWT 17565950v3 0020040-000084

1    Under these circumstances, because Plaintiff failed to meet the heightened requirements for

2    defamation-type damages, and because NBCUniversal did not violate any laws or commit any

3    cognizable violation of Plaintiff's constitutional rights in producing the broadcast, Plaintiff's

4    Section 1983 claim is barred under the First Amendment as a matter of law.

5    **B.    Plaintiff Cannot Establish Deprivation Of A Constitutional Right, Which Is Required
     For Recovery Under Section 1983.**

6

7    **1.    The Constitutional Right Of Privacy Does Not Extend To Complaints
     About Production And Broadcasts Of News Reports Such As This One.**

8    To the extent that Plaintiff is claiming a deprivation of a constitutional "privacy" interest

9    (3d Amended Compl. ¶¶ 8, 59(j), 62, 65-66), the courts have made clear that the constitutional

10   right of privacy does not extend to freedom from unwanted publicity (*Paul v. Davis*, 424 U.S. 693,

11   712 (1976)), and that claims for defamation and invasion of privacy, such as intrusion claims,

12   should be brought in state court and not through 42 U.S.C. § 1983 actions. *Baker v. Howard*, 419

13   F.2d 376, 377 (9th Cir. 1969) (per curiam); *Moncrief v. Hanton*, 10 Med.L.Rptr. 1620 (N.D. Ohio

14   1984); *Brooks v. American Broadcasting Cos.*, 737 F. Supp. 431 (N.D. Ohio 1990), *aff'd re*

15   *refusal to allow amendment to include federal civil rights claims*, 932 F.2d 495 (6th Cir. 1991).[6]

16   In *Paul v. Davis*, 424 U.S. 693, 712 (1976), the Supreme Court held plaintiff failed to state

17   a constitutional right of privacy violation based on publication of plaintiff's arrest on a shoplifting

18   charge after flyers including his identity were distributed throughout Louisville, Kentucky.  The

19   Supreme Court explained:

20   > The activities detailed as being within this definition [of
     > constitutional privacy] were ones very different from that for which

21   > respondent claims constitutional protection – matters relating to

22   _____

[6] *See also Fleming*, 837 F.2d at 409 (injury to reputation is not injury to federal right and therefore
23   not actionable under Section 1983); *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987)
     (dismissing Section 1983 claim premised on invasion of privacy and other tort-like behavior, and
24   stating that "[t]he civil rights statutes are not intended to federalize state tort law"); *Johnson v.
     Barker*, 799 F.2d 1396, 1399 (9th Cir. 1996); *Rosenberg v. Martin*, 478 F.2d 520, 525-526 (2d Cir.
25   1973) (rejecting Section 1983 claim, and finding no violation of the right to privacy where
     defendant was taken out of police car a half block from station and paraded before television
26   cameras, while the arresting officer announced "He is the killer, and he is going to burn"); *Mitchel
     v. City of Santa Rosa*, 695 F. Supp. 2d 1001, 1006 (N.D. Cal. 2010) ("a claim cannot be stated
27   under Section 1983 for a violation of state or local law"); *Chism v. Woodford*, 2008 U.S. Dist.
     LEXIS 63642 (N.D. Cal. July 22, 2008) (rejecting privacy claim as basis for Section 1983 lawsuit,
28   and finding that "[t]o state a claim a plaintiff must show a specific constitutional or federal
     guarantee safeguarding the interests that have been invaded").

DAVIS WRIGHT TREMAINE LLP

> marriage, procreation, contraception, family relationships, and child rearing and education. In those areas it has been held that there are limitations on the States' power to substantively regulate conduct. Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

*Paul v. Davis*, 424 U.S. at 713. The Court also stated that reputational damage claims arising from the publication were not cognizable under Section 1983 even where the consequences included impairment of future employment opportunities. *Paul v. Davis*, 424 U.S. at 697-699.

Even before *Paul v. Davis*, the Ninth Circuit recognized that state law privacy claims belong in state court and do not provide the basis for a Section 1983 claim. In *Baker v. Howard*, 419 F.2d at 377, the police gave a radio station a police report, and the radio station aired a report that plaintiff claimed suggested he had committed a crime. Plaintiff alleged he lost his teaching job as a result of the radio station report. *Id.* Nevertheless, the Ninth Circuit held that the plaintiff had no "constitutionally protected right of privacy" that could form the basis of a Section 1983 claim and declined to decide whether the plaintiff had stated a state common law claim. The Ninth Circuit also cautioned, "*we think that the case involves defendants' First Amendment right of free speech and free press and for that reason calls for the exercise of restraint.*" *Id.* (emphasis added).

Similarly, in *Moncrief v. Hanton*, 10 Med.L.Rptr. 1620 (N.D. Ohio 1984), the court held that "[w]here no federal right had been violated, there was no cause of action under § 1983," even if the media members could be found as acting under color of law with the arresting officers who they accompanied into the plaintiff's home. The court found that the news media's taking and publication of photographs of a handcuffed plaintiff who was under arrest did not give rise to a constitutional privacy claim that could provide the basis for Section 1983 liability. The court divided the constitutional right of privacy into two categories: "[t]he first category being the right to be free from substantive regulations by the government in certain areas of a person's life"; [t]he second category was the right to be free from unwanted publicity about one's affairs." "Only the

---

13

DAVIS WRIGHT TREMAINE LLP

1    former is protected by the Constitution," the court concluded.  "'The right to be free from

2    unwanted publicity ... is protected, if at all, by the common law and because it is not a federal

3    right, a § 1983 action will not lie for its invasion.'"  *Id.* at 1622 (quoting *Reilly v. Leonard*, 459 F.

4    Supp. 291 (D. Conn. 1978)).  Consequently, Moncrief's mere "embarrassment" at being

5    photographed in handcuffs, like Plaintiff's embarrassment at being recorded in handcuffs, was

6    insufficient to state a federal civil rights claim, and such a claim had to be brought, if at all, as a

7    state law invasion of privacy claim.  *Id.*

8          The same kind of pleading was rejected in *Brooks*.  In that case, ABC's *20/20* broadcast

9    excerpts of an interview between Geraldo Rivera and a man named William Brooks.  ABC lured

10   Brooks to an Akron hotel on the fictitious premise that Brooks was to meet with his attorney and

11   Geraldo for a private meeting.  When he arrived at the hotel, he was confronted by Geraldo and

12   cameras and asked questions concerning Brooks' connection with a local judge, James Barbuto,

13   who had been indicted for various criminal acts which allegedly occurred while he was a probate

14   judge.  Rivera's questions related to allegations that Brooks was an "enforcer" for Judge Barbuto,

15   and that he had been instructed to intimidate five prostitutes who were going to testify against the

16   judge.  Brooks sought to amend his complaint to add federal civil rights claims against ABC

17   stemming from the broadcasting and newsgathering for the broadcasting.  The court denied leave

18   to amend, stating, "Notwithstanding the conclusory allegations of a deprivation of his

19   constitutional right to privacy in ... Brooks's amended complaint, the facts alleged indicate that

20   what is really implicated are Brooks's rights to be free from defamation and the invasion of his

21   privacy.  These rights are not considered federally guaranteed rights but rather, if they exist at all,

22   are state rights which cannot form the basis of a section 1983 action."  *Id.* at 439 (citing *Rosenberg*

23   *v. Martin*, 478 F.2d 520, 524-525 (2d Cir. 1973)); *see also Mimms v. Philadelphia Newspapers*,

24   352 F. Supp. 862, 865 (E.D. Pa. 1972) (claim that publication of photograph humiliated prisoner

25   insufficient to state a cognizable Section 1983 claim based on constitutional invasion of privacy);

26   *Eidson v. Olathe*, 1992 U.S. Dist. LEXIS 17179, at *15-*16 (D. Kansas October 27, 1992) ("The

27   court concludes that plaintiffs' claim for invasion of privacy implicates no federal right which

28   could support a claim under Section 1983. ...  The right to be free from unwanted publicity,

DAVIS WRIGHT TREMAINE LLP

which appears to be the interest plaintiffs have attempted to implicate in the present suit, is protected, if at all, by the common law; and because it is not a federal right, a 1983 action will not lie for its invasion."); *Cowras v. Hard Copy*, 1997 U.S. Dist LEXIS 23514, at *17-18 (D. Conn. Sept. 29, 1997) (The "right to be free from unwarranted and unwanted publicity about one's affairs" is a privacy interest that is simply not protected by the Constitution).

As these decisions make clear, no federal policy is promoted by allowing Plaintiff to proceed in federal court instead of state court merely by labeling his claim "42 U.S.C. § 1983," which was plainly done to avoid the constitutional protections for speech embodied in California's anti-SLAPP statute. As explained above, Plaintiff has identified broadcast damages, but has not met the constitutional requisites of defamation law – such as proving falsity – necessary for recovery of such damages. Plaintiff also has made allegations in his complaint that are plainly state tort law invasion of privacy (intrusion) claims. For example, paragraph 59(j) of his Third Amended Complaint alleges that NBCUniversal "[u]nreasonably intruded upon Plaintiff's arrest, booking, police interrogation and detention with its television cameras and microphones. Similarly, paragraph 62 states that "NBC willfully and unreasonably intruded on Plaintiff's protected liberty, property or privacy interests in his person, visual image likeness, voice, speech and confidential conversations...." *See also* 3d Amended Compl. ¶ 8 (claiming that NBCUniversal "intruded on Plaintiff's privacy interests and personal rights"). Because state law intrusion and reputational injury claims such as these do not provide the basis for a federal Section 1983 action, Plaintiff's Section 1983 claim should be dismissed as a matter of law.

### 2.    Plaintiff Cannot Establish That Petaluma Police's Arrest Of Him Violated The Fourth Amendment.

Plaintiff attempts to impute to NBCUniversal an allegedly "unreasonable" seizure under the Fourth Amendment. 3d Amended Compl. ¶ 8, 57-67. When the Fourth Amendment is invoked, the issue becomes whether the defendant's actions in connection with any search or seizures which occurred were unreasonable under the circumstances. *Caldarola v. County of Westchester*, 343 F.3d 570, 574 (2d Cir. 2003). The court also must inquire into whether the

DAVIS WRIGHT TREMAINE LLP

15

1   government had a "legitimate government purpose" for the search or seizure and balance that

2   purpose against the privacy intrusion caused by the search or seizure. *Id.* at 576.

3        It is hornbook law that a seizure can only be unreasonable if the plaintiff had both

4   subjectively and objectively reasonable expectations of privacy. In other words, the plaintiff must

5   have had an actual belief in the privacy of the location or the particular information seized under

6   the circumstances, and society must be willing to recognize that expectation of privacy as

7   reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *see also United States v. Borowy*, 595

8   F.3d 1045, 1048 (9th Cir. 2010).

9        In two perp walk cases, the New York federal courts have explored the boundary between

10  permissible filming by the media of arrests and impermissible filming that may raise Fourth

11  Amendment violations. As the district court explained in *Caldarola v. County of Westchester*, 142

12  F. Supp. 2d 431 (S.D.N.Y. 2001), *aff'd* 219 F.3d at 207-209, in *Lauro v. Charles*, 219 F.3d 202,

13  207-208 (2d Cir. 2000), the police "staged" Lauro's arrest, marching him outside the police station

14  for a perp walk well after he had already been arrested. *Id.* at 440. By contrast, what happened to

15  the plaintiffs in *Caldarola* was not "fictitious," even though "there is no question that the arrest

16  was 'choreographed.'" *Id.* The plaintiffs, corrections officers arrested for receiving disability

17  benefits on the basis of fraudulent job injury claims, could have been arrested separately, but the

18  Department of Corrections required them to show up at the same designated place and time as part

19  of a sting operation filmed by the press. *Id.* Nevertheless, the court did not find that the

20  defendants' actions were "an improper exacerbation of an otherwise lawful seizure." *Id.* (quoting

21  *Lauro*, 219 F.3d at 209). The court explained:

22        Unlike the perp walk in *Lauro*, which was a fictional recreation of
          plaintiff's arrest, the footage shot in this case was 'reality television'
23        (albeit with scripted stage directions). Plaintiffs were actually being
          transported for arrest processing, so what was filmed was legitimate
24        law enforcement activity – not a wholly fictitious event.

25  *Id.*

26        The Second Circuit affirmed the district court's ruling in *Caldarola*. The court stated that

27  the plaintiff correction officers' reasonable expectation of privacy in their arrests on the DOC

28  grounds was "minimal," because when the video of their arrests was made, they were "outdoors in

---

16

DAVIS WRIGHT TREMAINE LLP

1  a place over which [they] exerted no dominion." 343 F.3d at 575.  The Second Circuit stated that

2  "[a] careful reading of *Lauro* … reveals that it was not the magnitude of Lauro's privacy interest

3  that enabled him to prevail on his claim, but instead the lack of any legitimate purpose served by

4  'an inherently fictional dramatization of an event that transpired hours earlier.'" *Id.* at 575-576

5  (quoting *Lauro*, 219 F.3d at 213) (emphasis added).

6           The Second Circuit in *Caldarola* then proceeded to determine that the making of the

7  videotape of the arrest and distribution of it to the media did serve a legitimate purpose: "the

8  County created and distributed the videotape to inform the public about its efforts to stop the

9  abuse of disability benefits by its employees.  The fact that corrections officers – public employees

10 – were arrested on suspicion of grand larceny is highly newsworthy and of great interest to the

11 public at large.  Divulging the arrests also enhances the transparency of the criminal justice

12 system, and it may deter others from attempting similar crimes.  Furthermore, allowing the public

13 to view images of an arrestee informs and enables members of the public who may come forward

14 with additional information relevant to the law enforcement investigation." *Id.*  The Second

15 Circuit also noted that "videotape can also be used to serve the legitimate government purpose of

16 protecting individuals from police abuse and protecting police from false accusations of abuse…."

17 *Id.* (citing *Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93, 98 (6th Cir. 1996)

18 (releasing images of the accused to the public "can startingly reveal the circumstances surrounding

19 an arrest and initial incarceration of an individual in a way that written information cannot," and

20 therefore finding that release of mug shots does not constitute an unwarranted invasion of personal

21 privacy under the Freedom of Information Act)).

22           Following these cases, NBCUniversal's news reporting captured legitimate law

23 enforcement activity, and not a "staged" recreation of events involving Plaintiff hours after they

24 occurred.  As in *Caldarola*, the footage shot was "reality television."  Plaintiff and other

25 individuals were filmed actually being arrested at the Petaluma home and later interviewed at the

26 Petaluma airport concerning their alleged transgressions; the filming was not "a wholly fictitious

27 event."  Moreover, the filming of Plaintiff's arrest served a legitimate government purpose –

28 informing the public about police efforts to stop adults from using the Internet to meet children for

1    sex.  There can be no dispute that the arrest of Plaintiff and others outside a home where they had

2    been told to go to meet a 13-year-old girl for sex is highly newsworthy and of legitimate public

3    interest.

4         In stark contrast to the manifest public interest in this news reporting is Plaintiff's minimal

5    privacy interest, if that, in his arrest and interrogation at a stranger's home and at the Petaluma

6    airport.  Fundamentally, Plaintiff would have to show that he had "dominion and control" over the

7    house and the pre-booking area of the airport – the only places where filming took place – to make

8    a viable Fourth Amendment claim based on an unreasonable search and seizure.  *See Caldarola*,

9    343 F.3d at 576 (fact that corrections officers did not have "dominion" over place where they were

10   arrested factored into finding that filming of arrests did not violate Fourth Amendment); *Rakas v.*

11   *Illinois*, 439 U.S. 128, 149 (1978) (rejecting defendants' Fourth Amendment challenge to police

12   search because defendants had no legitimate expectation of privacy in a place where they lacked

13   "dominion and control" and could not exclude others); *Minnesota v. Carter*, 525 U.S. 83, 90-91

14   (1998) (out-of-town defendants who came to another's apartment for the purpose of engaging in

15   criminal activity – packaging cocaine – did not have a reasonable expectation of privacy in the

16   apartment; the Court focused on the purely commercial nature of the transaction engaged in there,

17   the relatively short period of time in the apartment, and the lack of any previous connections

18   between the two defendants and the occupant of the apartment); *Nadell v. Las Vegas Metro. Police*

19   *Dep't*, 268 F.3d 924, 928 (9th Cir. 2001) (affirming judgment for defendants as a matter of law,

20   and finding that plaintiff bringing 42 U.S.C. § 1983 claim based on arrest for events that transpired

21   while she was a guest in another's house had no "legitimate expectation of privacy" in that house

22   and hence could not make Fourth Amendment claim); *Ortega v. City of Oakland*, 2008 U.S. Dist.

23   LEXIS 85183 (N.D. Cal. October 8, 2008) (finding that plaintiffs could not state Section 1983

24   claim because they had no reasonable expectation of privacy in the front yard of cousin's home

25   where they were arrested).

26        In this case, Plaintiff does not allege, nor can he, that Plaintiff exercised "dominion and

27   control" over the stranger's home or at the Petaluma airport, and society is not prepared to credit

28   any objectively reasonable expectation of privacy in such places by individuals like Plaintiff (a 29-

DAVIS WRIGHT TREMAINE LLP

18

1   year-old man going to a stranger's home more than 100 miles away to seek out a person who has

2   claimed to be a 13-year-old girl after engaging in sexually explicit chats on the Internet with the

3   person).  Plaintiff's claims to violation of Fourth Amendment privacy rights are foreclosed by

4   *Rakas*, where the Supreme Court observed that:

> a 'legitimate' expectation of privacy by definition means more than
> a ***subjective expectation of not being discovered***.  A burglar plying
> his trade in a summer cabin during the off season may have a
> thoroughly justified subjective expectation of privacy, but it is not
> one which the law recognizes as 'legitimate.'  His presence, in the
> words of *Jones*, 362 U.S. at 267, is 'wrongful'; his expectation is not
> 'one that society is prepared to recognize as 'reasonable.'

9   439 U.S. at 143 n.12 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J.,

10  concurring)).  Here, Tiwari has alleged nothing more than a subjective expectation of not being

11  discovered.  His presence at the house where he had been told a 13-year-old girl interested in sex

12  would be present was "wrongful," and this Court need not recognize his expectation of privacy as

13  "legitimate."  In addition, Plaintiff's claimed privacy interest in two places where he indisputably

14  did not have dominion and control is outweighed by the public interest in learning about his and

15  the other adult men's arrests for engaging in criminal misconduct.

16       As to the recording and broadcast of portions of the interview in the pre-booking area of

17  the Petaluma airport, Plaintiff does not have a reasonable expectation of privacy in conversations

18  with persons who happen to be law enforcement officers.  *See United States v. White*, 401 U.S.

19  745, 749 (1971) (officer's secret radio transmission of conversation with narcotics dealer gave rise

20  to no Fourth Amendment violation because dealer's expectation of privacy was not reasonable –

21  the Fourth Amendment affords "no protection to a wrongdoer's misplaced belief that a person to

22  whom he voluntarily confides his wrongdoing will not reveal it").[7]  Here, Plaintiff *voluntarily*

23  spoke to law enforcement officers in the booking and interview area at the airport after the officers

24  had read him his *Miranda* rights and after he had seen the cameras filming his interview with

25  NBC's Chris Hansen.  *See* Docket No. 75 (Broadcast); Ex. D (Footage of Plaintiff's Interview

26

27  [7] *United States v. Nerber*, 222 F.3d 597, 604 (9th Cir. 2000) (video recording a suspect in a hotel
    room did not violate the Fourth Amendment as long as informant was in room); *Forster v. County
    of Santa Barbara*, 896 F.2d 1146, 1149 (9th Cir. 1990); *Ahmad A. v. Superior Court*, 215 Cal.

28  App.3d 528, 534-36 (1989) (criminal suspect could not have objectively reasonable expectation of
    privacy to be free from secret recording in police interrogation room).

DAVIS WRIGHT TREMAINE LLP

1   With Petaluma Police).  This voluntary interview with Plaintiff occurred in a room where a large

2   microphone was mounted on the table in front of him recording the conversation.  *See id.*

3   (1:09:12-1:14:42 of the recording).  Under these circumstances, Plaintiff cannot base a Section

4   1983 claim on the recording of his conversation with the officers, as he had no objectively

5   reasonable expectation of privacy.

6         **3.**      **Plaintiff Cannot Impute An Excessive Force Claim From His Arrest To**

7                  **NBCUniversal, And The Petaluma Police Did Not Use Excessive Force**
               **In Arresting Plaintiff.**

8       *First*, the *Twombly/Iqbal* standard mandates that Plaintiff plead plausible facts supporting

9   his claims.  *See Ashcroft*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570.  As the Court stated in

10  *Twombly*, "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more

11  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

12  do...." *Twombly*, 550 U.S. at 555.

13      Here, Plaintiff claims that his Section 1983 lawsuit arises in part from the manner in which

14  Plaintiff was arrested (that Petaluma Police arrested him with guns drawn and that they "shouted

15  at" him and put him up against the wall, that they used handcuffs on him and that he remained in

16  handcuffs, that he allegedly suffered "pain and discomfort," etc. – *see* 3d Amended Compl. ¶¶ 59,

17  64).  Plaintiff, however, did not sue the Petaluma Police Department; he sued only NBCUniversal.

18  Plaintiff claims that NBCUniversal "directed the conditions, circumstances and manner in which

19  Plaintiff was seized and arrested by Petaluma Police" (3d Amended Compl. ¶ 59(d)), as if

20  NBCUniversal could exercise control over a sovereign law enforcement agency in its methods of

21  effecting arrests.  Directly contradicting Plaintiff's unsupported allegations about NBC, the

22  operation order that Plaintiff references in his Complaint (¶¶ 25-28, 58-59) and that he lodged with

23  the Court unattached to any motion (Docket No. 4) states, "Other than video and audio

24  surveillance, at no time will personnel from pervertedjustice.com or NBC Dateline participate in,

25  or be involved in the physical arrest of any suspect."  Plaintiff's claim that "NBC directed" the

26  manner in which Plaintiff was arrested is thus contradicted by the very document that Plaintiff

27  referenced in his Complaint.  Because Plaintiff's claim that NBCUniversal directed the manner in

28  which Plaintiff was arrested is contradicted by the document referenced by Plaintiff and because

DAVIS WRIGHT TREMAINE LLP

NBCUNIVERSAL'S MOTION TO DISMISS SECTION 1983 CLAIM
Case No.: C08-3988 MHP
DWT 17565950v3 0020040-000084

Plaintiff does not provide *any actual facts* supporting that NBCUniversal "directed" the manner in which the police took Plaintiff into custody, Plaintiff's excessive force allegations concerning NBCUniversal are implausible and do not meet the requirements of *Twombly*.[8]

*Second*, the Petaluma Police Department did not act with excessive force in arresting Plaintiff. The reasonableness of the force used in making an arrest is determined by the specific circumstances of the case. As the Supreme Court stated in *Graham v. Connor*, 490 U.S. 386, 396 (1989), determining whether the force used is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." To determine the government's interest, courts look at "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers or public safety; and (3) whether the suspect was resisting arresting or attempting to escape." *Id.* at 396. In determining whether the manner of arresting the person was objectively reasonable, the Ninth Circuit has explained that "police officers need not avail themselves of the least intrusive means of responding and need only act within the range of conduct we identify as reasonable." *Billington v. Smith*, 292 F.3d 1177, 1188-1189 (9th Cir. 2002).

Here, Plaintiff was suspected of felonies when the Petaluma Police stopped him and arrested him. He was originally charged with attempted lewd and lascivious acts with a minor under the age of 14. Ex. E (Criminal Docket in *People v. Tiwari* at 1 – citing Penal Code §§ 664, 288(a)). *See also* Compl. ¶ 42. The first factor thus weighs in favor of reasonableness on the part of the Petaluma police in arresting Plaintiff with guns drawn and using handcuffs. *See Hinz v. City of Everett*, 2010 U.S. Dist. LEXIS 80646, at *9-*13 (W.D. Wash. Aug. 10, 2010) (finding

---

[8] NBCUniversal knows of no case in which excessive force has been imputed to a media defendant as part of a Section 1983 action. The scant case law on private actors and excessive force claims also suggests an unwillingness to extend such excessive force liability in the manner suggested by Plaintiff. *See, e.g., Reusser v. Wachovia Bank*, 2006 U.S. Dist. LEXIS 55999, at *14-*16 (D. Or. Aug. 10, 2006) (bank's advice given to sheriff to use force when evicting people did not give rise to cognizable excessive force claim against bank as part of Section 1983 action); *Schwartz v. Town of Plainville*, 483 F. Supp. 2d 192, 196 (D. Conn. 2007) (refusing to impute police officers' excessive force to emergency medical technicians who were on the scene); *Ennis v. City of Daly City*, 2011 U.S. Dist. LEXIS 15824, at *13-*15 (N.D. Cal. Feb. 15, 2011) (no excessive force could be imputed to private person who signed a false citizen's arrest affidavit where Plaintiff could not provide facts showing a prior agreement or understanding that law enforcement would use such excessive force).

21

DAVIS WRIGHT TREMAINE LLP

1   that drawing a gun was reasonable because the suspected crimes were gross misdemeanors);

2   *Morgan v. City of Pleasant Hill*, 2005 U.S. Dist. LEXIS 40382, at \*15-\*17 (N.D. Cal. Dec. 16,

3   2005) (finding that pointing a gun at a person who the officers believed was in the middle of

4   committing a felony was reasonable); *Cameron v. Buether*, 2011 U.S. Dist. LEXIS 21833, at \*30-

5   \*34 (S.D. Cal. March 4, 2011) (no excessive force claim where officers entered residence with

6   guns drawn as they secured residence and handcuffed plaintiff because it was unknown how

7   people in house would react); *Teaze v. City of San Diego*, 2008 U.S. Dist. LEXIS 55352, at \*28

8   (S.D. Cal. July 15, 2008) (entering house with guns drawn for brief period to establish control as

9   they investigated report of elder abuse was not excessive force).

10          As to the second factor, law enforcement had a reasonable concern that these individuals

11   who had traveled long distances to solicit a person they had been told was 13 years old might try

12   to injure themselves or others after being caught engaging in this behavior. *See Johnson v. City of

13   Bellevue*, 2006 U.S. Dist. LEXIS 6023, at \*10-\*14 (W.D. Wash. Jan. 30, 2006) (arresting with

14   guns drawn reasonable where officers believed that individual was in imminent danger of hurting

15   himself). In addition, the highly publicized kidnapping and murder of 12-year-old Polly Klaas by

16   a pedophile in Petaluma made local law enforcement especially sensitive to the possibility of

17   violence from these suspects. *See* Exs. D-E.

18          The third factor also supports that the arrests were not conducted with excessive force. In

19   this case, Plaintiff also rushed out of the house upon meeting NBC's Chris Hansen (*see* Docket

20   No. 75 – Broadcast), which means that the Petaluma Police had exigent circumstances to arrest

21   Plaintiff with guns drawn and to use handcuffs. *See Johnson v. Solano County Sheriff's Dep't*,

22   2009 U.S. Dist. LEXIS 60130, at \*3-\*4 (E.D. Cal. July 13, 2009); *Tuttelman v. City of San Jose*,

23   2011 U.S. App. LEXIS 4993, at \*15-\*17 (9th Cir. March 11, 2011) ("*de minimis* use of force

24   cannot ground an *excessive* force claim under the Fourth Amendment where the force used was

25   minimal" and the arrestee was not "cooperative").

26          Because all three factors favor a finding that the method of the arrest was reasonable and

27   did not constitute excessive force, Plaintiff cannot base his Section 1983 claim on such

28   allegations.

DAVIS WRIGHT TREMAINE LLP

4.      **Plaintiff Cannot State A Fourteenth Amendment Claim Against NBC Universal For "Pre-trial Punishment."**

Plaintiff's claim for a Fourteenth Amendment violation of his due process right to be free from "pre-trial punishment" is also unpersuasive. *See* 3d Amended Compl. ¶ 8.  The Due Process Clause of the Fourteenth Amendment prohibits punishment (*Bell v. Wolfish*, 441 U.S. 520 (1979)), but the standard of what constitutes cognizable "punishment" is high, and NBCUniversal knows of no case where such "pre-trial punishment" was imputed to a news organization.  Such a drastic extension of Section 1983 law also would raise serious First Amendment concerns about punishing the press for truthful recording of events for broadcast. *See Bartnicki*, 532 U.S. at 535; *Florida Star*, 491 U.S.at 533; *Smith*, 443 U.S. at 105-106; *Landmark Commc'ns*, 435 U.S. at 845; footnote 4, *infra*.

For an action to constitute pre-trial punishment, Plaintiff must show the following: "(1) that action caused the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004).  If the purpose is "but an incident of some other legitimate governmental purpose," Plaintiff has no pre-trial punishment claim. *Id.*  In *Demery*, the Ninth Circuit expressly distinguished between the situation before the court, where Maricopa County Sheriff Joe Arpaio had installed 24-hour webcam recordings of detainees in the jail, and the "one-time filming of an arrestee," the latter of which the court stated was permissible and not an infringement of Fourteenth Amendment rights.  The court explained, citing *Caldarola*, 343 F.3d at 576, that filming a one-time arrest was not as intrusive as the 24-hour filming engaged in by Sheriff Arpaio, and recognized that the filming does promote a legitimate government interest – "informing the public about its efforts to enforce the law that the defendant was charged with violating." *Id.* at 1031 n.4.

Here, NBCUniversal filmed the one-time arrest of Plaintiff by law enforcement, and its recording does not constitute pre-trial punishment under *Demery* or any other case.

DAVIS WRIGHT TREMAINE LLP

23

### 4. CONCLUSION

In *Snyder v. Phelps*, the Supreme Court recognized that "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." 131 S. Ct. at 1211 (internal citation omitted). Here, NBCUniversal engaged in such speech on public issues when it broadcast a news report on adult men using the Internet to solicit minors for sexual banter and to set up real-world meetings. Because Plaintiff does not allege – and cannot make any allegations that the broadcast is false when the videotapes accurately depict Plaintiff engaged in criminal behavior for which he was arrested – NBCUniversal's broadcast is protected by the First Amendment, and Plaintiff's Section 1983 claim must be dismissed as a matter of law. Likewise, Plaintiff has failed to show the deprivation of constitutional privacy rights; his Complaint is replete with allegations about state tort law privacy claims that cannot be the predicate for a viable Section 1983 claim. For all of these reasons, NBCUniversal respectfully requests that the Court dismiss with prejudice the Section 1983 claim from Plaintiff's Complaint.

DATED this 22nd day of July 2011.                    DAVIS WRIGHT TREMAINE LLP

By:  */s/ Thomas R. Burke*
     THOMAS R. BURKE
     Attorneys for Defendant
     NBCUNIVERSAL MEDIA, LLC

DAVIS WRIGHT TREMAINE LLP