PAGES 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE

ANURAG TIWARI,

|  |  |  |
|---|---|---|
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. C 08-03988 EMC (LB) |
| | ) | |
| NBCUNIVERSAL, INC., | ) | |
| | ) | SAN FRANCISCO, CALIFORNIA |
| DEFENDANT. | ) | WEDNESDAY |
| | ) | MAY 2, 2012 |
| _____ | ) | 12:05 O'CLOCK P.M. |

**TRANSCRIPT OF PHONE** CONFERENCE

**APPEARANCES**:

FOR PLAINTIFF:          GIRARD GIBBS LLP
                        601 CALIFORNIA STREET
                        SUITE 1400
                        SAN FRANCISCO, CALIFORNIA 94108
                BY:  **ELIZABETH PRITZKER, ATTORNEY AT LAW**
                        981-4846
                        (BY PHONE)


FOR DEFENDANT:          DAVIS WRIGHT TREMAINE LLP
                        505 MONTGOMERY STREET, SUITE 800
                        SAN FRANCISCO, CALIFORNIA 94111
                BY:  **THOMAS R. BURKE, ESQUIRE**
                     **JEFF GLASSER, ESQUIRE**
                        (BY PHONE)
*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
          *OFFICIAL REPORTER - US DISTRICT COURT*
          *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

```
 1   MAY 2, 2012                              12:05 O'CLOCK  P.M.

 2

 3                       P R O C E E D I N G S

 4          THE CLERK:  CALLING CIVIL ACTION C08-3988, ANURAG

 5   TIWARI VERSUS NBC UNIVERSAL, INC.

 6          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

 7   RECORD.

 8          MS. PRITZKER:  GOOD DAY.  THIS IS ELIZABETH PRITZKER

 9   FROM GIRARD GIBBS ON BEHALF OF PLAINTIFF ANURAG TIWARI.

10          MR. BURKE:  GOOD MORNING.  THOMAS BURKE OF DAVIS

11   WRIGHT TREMAINE.  I BELIEVE MY COLLEAGUE, JEFF GLASSER, FROM MY

12   FIRM IS ALSO HERE WE'RE REPRESENTING DEFENDANT NBC UNIVERSAL

13   MEDIA.

14          THE COURT:  ALL RIGHT. IS MR. GLASSER, ARE YOU THERE,

15   TOO?

16          MR. GLASSER:  I AM HERE.

17          THE COURT:  EXCELLENT. ALL RIGHT. GOOD AFTERNOON TO

18   EVERYBODY.  SORRY.  I HEAR THERE WAS A LITTLE BIT OF CONFUSION

19   ABOUT WHETHER YOU WERE REALLY ON CALENDAR TODAY, SO I'M GLAD

20   EVERYONE WAS AVAILABLE.

21          I ALSO REALIZE THAT YOU SUPPLIED YOUR JOINT LETTER TO

22   JUDGE CHEN, AND THERE WAS A REFERRAL TO ME.  AND THERE WAS A

23   LITTLE BIT OF A DELAY IN IT BEING BROUGHT TO MY ATTENTION.  BUT

24   I WANTED TO HAVE A CONVERSATION WITH YOU ABOUT IT TODAY ON THE

25   RECORD, PRIMARILY BECAUSE I'M GOING TO BE UNAVAILABLE FOR THE
```

1   NEXT TWO WEEKS. AND I WANTED TO TALK WITH YOU ABOUT IT FIRST.

2           I'M MINDFUL THAT WE'RE STILL WELL WITHIN THE TIME

3   PERIODS THAT JUDGE CHEN HAS SET, BUT I THINK I SAW ON THE

4   CALENDAR THAT YOU HAVE A SETTLEMENT CONFERENCE COMING UP

5   POSSIBLY WITH JUDGE SPERO?  IS THAT RIGHT?  ON JUNE 18TH?  AM I

6   JUST HALLUCINATING THAT, OR WAS THAT RIGHT?

7           **MR. BURKE:**  THAT IS CORRECT.

8           **MS. PRITZKER:**  THAT IS CORRECT.

9           **THE COURT:**  SO FOR THE TWO MEN ON THE PHONE, SINCE

10  WE'RE ON THE RECORD, GIVEN THAT IT'S JUDGE CHEN'S CASE, EVEN

11  THOUGH I DO RECOGNIZE YOUR VOICES SINCE I'VE HAD MR. BURKE IN

12  ANOTHER CASE, IT WOULD BE GREAT IF YOU COULD IDENTIFY YOURSELF

13  FOR THE COURT REPORTER.

14          **MR. BURKE:**  OKAY.  THIS IS TOM BURKE.  AND I'LL --

15  UNLESS I INTRODUCE HIM, I'LL BE THE MALE VOICE SPEAKING IN THIS

16  PLAY.

17          **THE COURT:**  THAT SOUNDS GOOD. THANK YOU FOR

18  CLARIFYING THAT.

19          ALL RIGHT.  SO LET ME TELL YOU I'VE READ YOUR PAPERS.

20  I READ THROUGH THE DOCKET. I READ THE CASES THAT YOU ALL CITED.

21  AND I WANTED TO ASK YOU FIRST, BECAUSE I COULDN'T GET THIS

22  FROM -- IT SEEMED TO ME FROM YOUR LETTER THAT I COULDN'T TELL IF

23  MR. TIWARI HAD THE UNEDITED FOOTAGE OF HIMSELF.

24          **MS. PRITZKER:**  I THINK THERE IS A DISPUTE OF FACT ON

25  THAT POINT, YOUR HONOR.

1    **THE COURT:** I MEAN, HE OBVIOUSLY -- WELL, I ACCEPT

2    PROBABLY THAT THE REPRESENTATION -- AND IT'S JUST GOT TO BE

3    TRUE -- THAT HE PROBABLY GOT IT -- THAT HE GOT IT FOR HIS

4    UNDERLYING CASES. THAT CASE, THAT'S A DIFFERENT -- SINCE IT WAS

5    AUGUST, 2006, THAT'S A DIFFERENCE BETWEEN ACTUALLY HAVING IT

6    PERSONALLY.  SOMETIMES DISCOVERY IN THE CRIMINAL CONTEXT, IF IT

7    WAS, FOR EXAMPLE, SUBPOENAED BY A PROSECUTOR AND THEN DISCLOSED

8    TO A PERSON WHO IS CHARGED IN A CASE, THERE CAN BE LIMITATIONS

9    ON ITS USE, AND THERE COULD BE LIMITATIONS ON THE ACCESS.

10   AND SO THAT'S WHY I ASKED THE QUESTION, FIRST OFF:

11   DID HE ACTUALLY HAVE IT AND --

12   **MS. PRITZKER:** HE DID POSSESS UNEDITED FOOTAGE AS

13   PART OF HIS UNDERLYING ACTION.  HE RECEIVED -- APPARENTLY, THERE

14   WAS SOME FOOTAGE REMOVED.  AND THAT'S WHAT HE HAS.

15   **THE COURT:** OKAY.

16   **MS. PRITZKER:** AND --

17   **THE COURT:** SO HE'S GOT SOMETHING, BUT YOU'RE NOT

18   SURE IT'S ALL OF THE FOOTAGE OF HIMSELF, AT LEAST.

19   **MS. PRITZKER:** HE DOES NOT BELIEVE THAT IT IS THE

20   COMPLETE UNEDITED.

21   **MR. BURKE:** AND, YOUR HONOR, I DON'T DOUBT THAT HE

22   HAS THOSE BELIEFS.  HE HAS A LOT OF BELIEFS ABOUT THINGS IN THIS

23   CASE, BUT THE FOOTAGE OF THE ACTUAL BROADCAST OF THE PROGRAM AND

24   THE FOOTAGE, WHETHER BROADCAST OR NOT, THAT NBC TOOK OF HIM WAS

25   PRODUCED TO HIM, TO HIS CRIMINAL LAWYER IN THE CRIMINAL CASE

1    SEVERAL YEARS AGO.

2              IT'S MY UNDERSTANDING, I BELIEVE -- BUT HAVE NOT

3    LOOKED AT THE DOCKET TO CONFIRM THIS -- BUT I BELIEVE WE ALSO

4    PRODUCED THAT EARLIER IN THIS CASE TO HIM. WE COULD CERTAINLY

5    PRODUCE THAT AGAIN.

6              **THE COURT:**  OKAY. GOOD.

7              **MR. BURKE:**  I BELIEVE IF THERE IS ANY SORT OF ISSUE

8    IN THAT -- IF THERE'S ANY SORT OF ISSUE THAT HE BELIEVES THAT

9    THERE'S ADDITIONAL FOOTAGE, TO THE BEST OF MY KNOWLEDGE THAT

10   FOOTAGE HAS ALREADY BEEN PRODUCED.

11             **THE COURT:**  OKAY.  GOOD. THANK YOU.  THAT'S HELPFUL

12   TO KNOW.

13             SO LET ME TELL WHAT YOU I'M THINKING. THIS IS -- SO

14   IN THE END, WHAT WE HAVE ARE THE SECTION 1983 CLAIMS. AND THOSE

15   CLAIMS BOIL DOWN TO -- I'M JUST GOING TO -- I'M JUST THINKING A

16   LITTLE OUT LOUD.

17             SO JUST PROCESSING, THOSE CLAIMS SEEM TO -- JUDGE

18   CHEN SEEMS TO TALK ABOUT IN HIS ORDER ABOUT SORT OF PRIVACY, THE

19   PRIVACY FOURTH AMENDMENT KINDS OF CLAIM.  EXCESSIVE FORCE IN

20   ARRESTING MR. TIWARI, AND THEN THE SUBSTANTIVE DUE PROCESS

21   VIOLATION PREDICATED ON HIS RIGHT TO BE FREE FROM PRETRIAL

22   PUNISHMENT.

23             AND THEN, YOU KNOW, JUST PROBLEM SOLVING, THIS VERY

24   PRAGMATIC WAY AND LEAVING ASIDE THE ISSUE OF A MEDIA DEFENDANT,

25   BUT JUST SORT OF AN ORDINARY DEFENDANT, THE ISSUES THEN BECOME

1   ONE OF JOINT ACTION TO SATISFY THE STATE ACTOR COMPONENT OF ANY

2   CIVIL RIGHTS CLAIM.

3            AND SO I UNDERSTAND THAT.  IT SEEMED TO ME THAT FROM

4   A -- AND, AGAIN, THIS IS AGAIN PRACTICAL CASE MANAGEMENT ISSUES,

5   AS OPPOSED TO SUBSTANTIVE WHAT YOU DO GET FROM DISCOVERY ISSUES,

6   YOU KNOW, FROM AN ILLUMINATION FOR THE SETTLEMENT LAY OF THE

7   LAND, AT LEAST WHEN SOMEONE HAS ALL THE FOOTAGE OF HIMSELF AND

8   WHAT HAPPENED, THAT SEEMS LIKE A GOOD START JUST FROM A CASE

9   MANAGEMENT.

10           WHEN I THINK ABOUT THE KINDS OF CATEGORIES OF

11  INFORMATION THAT THE PARTIES ARE TALKING ABOUT HERE, TURNING

12  FIRST TO THE OTHER FOOTAGE -- AND SO IT SEEMS -- AND THIS IS --

13  I'M CALLING IT "OPERATION PETALUMA."  I CAN'T REMEMBER IF THAT'S

14  WHAT YOU CALLED IT OR WHATEVER.

15           BUT AS I UNDERSTAND IT, THE TCAP DATELINE NBC

16  PROGRAM, WHAT'S -- AT THE END OF THE DAY IF YOU ARE PIGGYBACKING

17  JOINT ACTION ONTO AN ORDINARY STATE ACTOR KIND OF SECTION 1983

18  CLAIM, THE UNIVERSE OF INFORMATION MOST RELEVANT TO -- LET'S

19  TALK FIRST JUST ABOUT JOINT ACTION, THE STATE ACTION KIND OF

20  COMPONENT OF IT, IT SEEMS TO ME THAT THOUGH CERTAINLY -- AND THE

21  FOOTAGE OF PLAINTIFF IS IMPORTANT.  ALSO, IT COULD BE IT IS

22  RELEVANT. INFORMATION THAT SHOWS THE NATURE OF THE COLLABORATION

23  WITH THE POLICE OFFICERS AT PLAY IN THIS CASE BECAUSE IT'S --

24  YOU KNOW, AGAIN, THIS MAY NOT BE THE MOST PERFECT WAY OF

25  CONCEPTUALIZING IT LEGALLY, BUT IT'S A PIGGYBACK CLAIM UNDER

1  CLAIM ONE WHERE HE BROUGHT IT ABOUT POLICE OFFICERS THAT DEPENDS

2  ON THERE BEING JOINT ACTION.

3          THAT'S THE WAY OF LOOKING AT WHAT DISCOVERY OUGHT TO

4  ORDINARILY BE RELEVANT.  AGAIN, LEAVING ASIDE THE MEDIA

5  DEFENDANT ASPECT OF THINGS.

6          AND SO THAT'S WHAT I WAS THINKING ABOUT, JUST SORT OF

7  GENERALLY. AND THEN, I SUPPOSE -- WELL, THEN I GET -- THAT

8  BECOMES A LITTLE BIT MORE ATTENUATED FOR ME.

9          I'M NOT SURE HOW I WANT TO SAY THIS. ONCE WE START

10  GETTING INTO THE POLICIES AND PRACTICES REGARDING CONFLICTS AND

11  FACT CHECKING AND THE EMPLOYEES' COMMENTS ON THE PROGRAM'S

12  FAIRNESS, IT SEEMS TO ME THAT THE ONLY AREA THAT'S -- UNLESS

13  THERE ARE POLICIES THAT ARE RELEVANT TO THE JOINT ACTION

14  COMPONENT, SOME KIND OF POLICY THAT IS ABOUT HOW DATELINE NBC

15  WORKS WITH THE LOCALS, THAT SEEMS TO ME -- AND MAYBE EVEN

16  EMPLOYEE COMMENTS ON IT -- THAT SEEMS TO BE RELEVANT TO JOINT

17  ACTION.

18          AND THE SECOND KIND OF CASE LAW COMPONENT OF THAT IS

19  IT DID SEEM UNDER SECTION 1983 CASE LAW, YOU KNOW, BEING VERY

20  MINDFUL OF DEFENDANT'S ARGUMENTS THAT THE ONLY CLAIMS REMAINING

21  ARE THE 1983 CLAIMS AND THE INTENTIONAL INFLICTION OF EMOTIONAL

22  DISTRESS CLAIMS AREN'T ORDINARILY RELEVANT.  PUNITIVE DAMAGES

23  CAN BE A WAY OF GETTING AT WHAT I CALL "DOCUMENTS SHOWING A

24  MALICIOUS INTENT" OR THE BAD MOTIVE THAT DRIVES PUNITIVES.

25          ALL RIGHT.  SO THAT'S -- SO THOSE WERE SOME OF MY

1    PRELIMINARY SORT OF NORMAL REACTIONS TO THE KIND OF DISCOVERY

2    BEING SOUGHT.

3              ON TOP OF THAT WITH THE MEDIA DEFENDANT, LOOK AT THE

4    END OF THE DAY, THE CASES DO REQUIRE A LITIGANT TO SHOW THAT THE

5    REQUESTED MATERIAL IS UNAVAILABLE DESPITE EXHAUSTION OF

6    REASONABLE ALTERNATIVE SOURCES.

7              IT SEEMED TO ME THAT, LOOK, I GET THAT YOU CAN DO

8    DEPOSITIONS AND GET AT THE NATURE OF THE COLLABORATION.  BUT IT

9    SEEMED THE BEST WAY OF SHOWING IT WAS TO LOOK AT THE FOOTAGE

10   SHOWING INTERACTIONS WITH THE POLICE, NOT JUST NECESSARILY IN

11   MR. TIWARI'S CONTEXT.

12             I GET THAT THERE COULD BE A LOT OF INFORMATION THERE.

13   AND I THINK THAT NBC WAS NOT ONLY ARGUING SOME OF THE PRIVILEGE

14   ISSUES, BUT THAT THERE COULD BE OTHER PEOPLE WHO HAVE INTERESTS

15   WHO APPEAR IN THE UNPUBLISHED FOOTAGE.

16             AND YOU ALSO TALKED ABOUT THE BURDENS REQUIRED TO

17   REVIEW IT. AND LEAVING ASIDE JUST, YOU KNOW, HOW I FEEL ABOUT

18   THE BUSINESS BURDENS IMPLIED ON A MEDIA DEFENDANT, IT SEEMED

19   LIKE SOME OF THE BURDEN ASPECT OF IT COULD BE ADDRESSED BY --

20   THE ACTUAL VIDEO FOOTAGE, IN A DISCRETE PERIOD FOR OPERATION

21   PETALUMA SEEMED TO ME THAT IT OUGHT TO BE -- COULD BE PRODUCED

22   PURSUANT TO A PROTECTIVE ORDER THAT BEFORE IT GOT USED WOULD

23   REQUIRE SOME BURDEN ON PLAINTIFFS, BECAUSE A LOT OF IT AT THE

24   END OF THE DAY PROBABLY ISN'T GOING TO BE SORT OF SOFT OR WEAK

25   EVIDENCE ABOUT JOINT ACTION.

1          BECAUSE TO THE EXTENT THAT IT DOESN'T SHOW MR. TIWARI

2     DIRECTLY, THAT THE CONSTITUTIONAL STANDARDS ARE OBJECTIVE

3     STANDARDS.  AND WHAT HAPPENED TO HIM AT THE END OF THE DAY IS

4     GOING TO DRIVE ANY LIABILITY.  AND SO WHATEVER THE POLICE

5     OFFICERS DID, THAT'S GOING TO IMPOSE THE REQUIREMENT -- THAT'S

6     GOING TO BE THE BASIS FOR ANY CLAIM.

7          AND NBC'S LIABILITY, IF ANY, WOULD BE BASED ONLY

8     GIVEN THE CLAIMS THAT SURVIVE ON JOINT ACTION WITH THE POLICE.

9     SO --

10          **MR. BURKE:**  YOUR HONOR?

11          **THE COURT:**  SO I'M MINDFUL OF THE -- AT THE END,

12     THERE MAY NOT BE A LOT THAT IS RELEVANT THERE.  BUT IT SEEMS

13     LIKE IT WOULD BE THE ONLY WAY THIS MANY YEARS AFTER THE EVENTS

14     FOR MR. TIWARI TO GET ACCESS TO THAT INFORMATION.

15          **MR. BURKE:**  YOUR HONOR, I DON'T KNOW.  I MEAN, WE'VE

16     OBVIOUSLY ASKED FOR THE OPPORTUNITY TO BRIEF THIS. THESE

17     AREN'T -- AND TO BE ABLE TO GIVE THE COURT SOME FACTUAL SHOWING.

18          AND THERE'S A LOT OF GROUND TO COVER HERE.  BUT JUST

19     ON THE VIDEO ITSELF, I WANT THE COURT TO BE AWARE THAT WE DO

20     HAVE A DEPOSITION SCHEDULED FOR LIEUTENANT STAPLETON WHO WAS,

21     FROM WHAT I CAN TELL, IN CHARGE OF THIS FROM THE PETALUMA

22     POLICE, THAT'S EITHER GOING TO TAKE PLACE AT THE END OF MAY OR

23     JUNE 5TH IS THE DATE THAT ELIZABETH AND I BOTH HAVE AVAILABLE

24     THAT WE'RE GOING TO ASK IF HE CAN BE AVAILABLE TO ACCOMMODATE

25     EVERYBODY'S SCHEDULE.

1          THAT IN TERMS OF THE OPERATION WILL BE AN IMPORTANT

2    DEPOSITION FOR THOSE ISSUES.  AND THAT, OBVIOUSLY, WILL COME

3    BEFORE THE PARTIES' SETTLEMENT CONFERENCE.

4          BUT SETTING ASIDE THE PRIVILEGE ISSUES THAT WE'VE

5    OUTLINED, THIS IS REALLY A SHOEN V. SHOEN SITUATION.  IT'S NOT A

6    CALIFORNIA SHIELD LAW SITUATION.

7          **THE COURT:**  I AGREE WITH THAT.

8          **MR. BURKE:**  THAT, YOU KNOW, THE ISSUE OF PRODUCING --

9    THIS IS NOT -- THIS IS A LIMITED TWO OR THREE DAYS IN PETALUMA,

10   THREE DAYS.

11         **THE COURT:**  RIGHT.

12         **MR. BURKE:**  BUT THIS IS NOT A LIMITED AMOUNT OF

13   FOOTAGE. AND THE BIGGEST CONCERN THAT I HAVE, BECAUSE I DON'T

14   NECESSARILY DISAGREE WITH THE COURT'S ANALYSIS, OF COURSE, ON

15   PROTECTIVE ORDERS AND OTHER ISSUES, BUT THIS, THIS WILL BE A

16   MAJOR UNDERTAKING, YOU KNOW, IN TERMS OF COST AND TIME, NOT ONLY

17   TO MAKE THE COPIES FOR IT, BECAUSE THIS IS EVERY CAMERA'S

18   FOOTAGE FOR THOSE THREE DAYS. AND THAT'S THREE DAYS OF FULL

19   FOOTAGE.

20         BUT IT IS GOING TO BE COUNSEL'S REVIEW OF THAT

21   FOOTAGE ON THE THEORETICAL PROSPECT THAT SOME OF IT MIGHT BE

22   RELEVANT.  AND IT'S, I THINK, FROM HEARING FROM THE COURT'S

23   INITIAL TAKE ON IT FROM A LIABILITY STANDPOINT IT'S ONLY

24   RELEVANT, THE FOOTAGE THAT IS ABOUT MR. TIWARI'S INTERACTIONS

25   WITH LAW ENFORCEMENT THAT IS THE ONLY FOOTAGE THAT'S RELEVANT.

1    AND THAT'S THE FOOTAGE HE ALREADY HAS AND HAD FOR YEARS.

2            **THE COURT:**  LET ME JUST MAKE THE OBSERVATION, THOUGH,

3    I'M GENERALLY WITH YOU. THE EXCEPTION THERE IN ADDITION TO THAT

4    THAT I WOULD SUGGEST IS WHAT'S REALLY GOING TO BE THE ISSUE AT

5    PLAY HERE IS NOT JUST WHAT HAPPENED TO MR. TIWARI, BUT ALSO

6    NBC'S JOINT ACTION WITH THE POLICE.

7            **MS. PRITZKER:**  YES.

8            **THE COURT:**  AND SO WHAT HAPPENED TO MR. TIWARI RARE

9    WILL SHOW WHETHER THERE IS POTENTIALLY AN EXCESS OF FORCE CLAIM

10   THAT WOULD HAVE TO RELY ON POLICE ACTION. BUT WHAT THE FOOTAGE

11   MIGHT -- AND I -- IT'S ALMOST AS IF YOU COULD FILE A SUMMARY

12   JUDGMENT MOTION SAYING, YOU KNOW:  FOR SUMMARY JUDGMENT

13   PURPOSES, ASSUMING JOINT ACTION UNDER THE CONSTITUTIONAL

14   STANDARD REQUIRED FOR A PRIVATE ACTOR TO BE HELD LIABLE FOR A

15   CONSTITUTIONAL VIOLATION BY A PUBLIC OFFICIAL, ASSUMING THAT HE

16   LOSES. IF THAT'S THE CASE, THEN, I THINK ALL THAT OTHER FOOTAGE

17   PROBABLY WOULD BE IRRELEVANT, RENDERED IRRELEVANT.

18            SO BUT IT SEEMS TO ME THAT -- AND I HEAR YOU ON THE

19   THREE-DAY REVIEW ISSUE. AND I ALSO HEAR YOU ON THE

20   SHOEN V. SHOEN ISSUE. I THINK THAT GIVEN THAT YOU HAVE A

21   DEPOSITION, I PROBABLY WOULD SAY THAT AT LEAST THE DEPOSITION IS

22   ONE STEP TOWARDS EXHAUSTING REASONABLE ALTERNATIVE SOURCES.

23           **MS. PRITZKER:**  YOUR HONOR, I CAN CUT THROUGH THIS A

24   LITTLE BIT.

25           **THE COURT:**  YES.

1          **MS. PRITZKER:**  ELIZABETH PRITZKER.

2          THE UNEDITED FOOTAGE OF THE THREE-DAY OPERATION IS

3   CRITICAL TO SHOWING JOINT ACTION HERE.

4          **THE COURT:**  RIGHT.  THAT'S JUST WHAT I SAID.

5          **MS. PRITZKER:**  YES.  BUT I WANT TO EMPHASIZE THAT

6   AGAIN. TO CUT THROUGH THE BURDEN ARGUMENT, WE HAVE MADE A

7   SIMILAR DEMAND BOTH TO SERGEANT STAPLETON AND TO THE POLICE

8   DEPARTMENT WHATEVER RECORDINGS OR FOOTAGE THEY HAVE OF THE

9   THREE-DAY OPERATION.

10          I HAD SPOKEN TO THE COUNSEL FOR THE POLICE DEPARTMENT

11   ABOUT THEM PRODUCING THAT MATERIAL, AND NOW IT'S NOT -- I DON'T

12   KNOW THAT IT IS IN UNEDITED FORM. I DON'T FRANKLY KNOW WHAT FORM

13   IT'S IN. IT'S WHATEVER THEY HAVE.

14          BUT THEY HAVE AGREED TO PRODUCE IT WITH ONE EXCEPTION

15   THAT WE'RE WORKING THROUGH.  THERE'S APPARENTLY A PENDING CASE

16   THAT, OBVIOUSLY, I DON'T WANT TO INTERFERE WITH ANY ONGOING LAW

17   ENFORCEMENT OR PROSECUTION OF OR DEFENSE OF ONE ONGOING CASE.

18          BUT THEY HAVE AGREED TO PRODUCE WHAT THEY CONTEND ARE

19   BOXES AND BOXES OF RECORDINGS WITHOUT ANY CLAIM OF BURDEN.

20          **THE COURT:**  OKAY.

21          **MS. PRITZKER:**  SO --

22          **THE COURT:**  WELL, SO YOU KNOW THE ONE THING IS THAT

23   YOU GET THAT.  YOU GET THE OPERATION'S PLANS OR THE EQUIVALENT

24   OF THE TIME PERIOD THAT THE POLICE OFFICERS WERE ENGAGED IN THE

25   JOINT ACTION WITH THE MEDIA DEFENDANT.

 1          YOU MAY BE ABLE TO TAILOR YOUR REQUEST FOR FOOTAGE,

 2   FOR EXAMPLE, NOT THAT I -- I'M NOT -- YOU KNOW, I'M NOT EVEN

 3   COMMENTING ON THE BURDEN, BECAUSE I'M JUST SAYING THAT IT COULD

 4   STREAMLINE A DISCOVERY PROCESS RATHER THAN HAVING A, YOU KNOW,

 5   SORT OF -- IT JUST SEEMS LIKE WHY WOULDN'T YOU SORT OF -- A LOT

 6   OF THE FOOTAGE FOR OPERATION PETALUMA, UNLESS IT INVOLVES POLICE

 7   OFFICERS, WHAT'S GOING TO BE RELEVANT IS WHAT INFORMATION IS

 8   OUT THERE THAT SHOWS JOINT ACTION BY NBC AND THE PETALUMA POLICE

 9   OR WHOEVER WAS INVOLVED IN THE DATELINE.

10          **MS. PRITZKER:**  THAT'S CORRECT, YOUR HONOR. AND THERE

11   MAY BE IN SOME OF THE OUTTAKES THAT WE DON'T HAVE, DIRECTION OR

12   OTHER COMMUNICATION WITH POLICE THAT WOULD HELP ESTABLISH THAT,

13   THAT JOINT ACTION. AND THAT'S WHAT WE'RE LOOKING FOR.

14          **THE COURT:**  AND I WOULD SAY THAT YOU COULD GET IT,

15   BUT THERE IS THAT CASE LAW THAT TALKS ABOUT EXHAUSTION OF

16   REASONABLE ALTERNATIVE SOURCES UNTIL YOU KNOW WHAT YOU'VE GOTTEN

17   FROM THE POLICE AND TO KNOW WHAT YOU DON'T HAVE THAT NBC MIGHT

18   HAVE, IT SEEMS TO ME THAT BECOMES AT LEAST SOMETHING THAT YOU

19   OUGHT TO SHOW UNDER THE SHOEN STANDARD TO SHOW THAT YOU'VE

20   EXHAUSTED YOUR ALTERNATIVE SOURCES.

21          **MS. PRITZKER:**  BUT WE DIDN'T HAVE A RESPONSE TO OUR

22   SUBPOENA UNTIL THIS WAS ALREADY BRIEFED IN FRONT OF YOUR HONOR.

23          **THE COURT:**  DOES THAT MAKE SENSE?  I'M NOT SAYING NO?

24   I'M JUST SAYING "SEE WHAT YOU'VE GOT.  TELL ME WHAT YOU CAN

25   GET" --

```
1        MR. BURKE:  YES, I THINK IN SOME WAYS, ELIZABETH,

2   THAT MAY ANSWER SOME ISSUES, OR I GUESS IT, IN QUOTES, "HELPS"

3   OTHER ISSUES.

4        I THINK THAT THE PROBLEM WITH IT -- AND I DON'T KNOW

5   THAT THERE IS AN ANSWER TO IT -- THE PROBLEM TO IT IS, YOU KNOW,

6   THERE IS GOING TO BE -- YOU KNOW, THERE'S THE SHIELD LAW ASPECT

7   AND THE TIME ASPECT, WHICH WE'RE CERTAINLY NOT GOING TO WAIVE OF

8   THE SHOEN TEST. BUT LET'S SAY YOU'VE GOT FROM THE CITY

9   VIDEOTAPE.

10        THAT DOESN'T RESOLVE THE ISSUE WITH RESPECT TO HOW

11   MUCH TIME IT'S GOING TO TAKE FOR BOTH SIDES TO BE LOOKING FOR

12   FOOTAGE THAT HAS NOTHING TO DO WITH MR. TIWARI'S ARREST OR

13   EXPOSED FOOTAGE OF, YOU KNOW, THE DOCUMENT STATE ACTOR.  IT'S

14   NOT LIKE IT'S LABELED.

15        THE COURT:  BUT THE PROBLEM -- THAT'S PROBABLY TRUE.

16   BUT THE ONE ISSUE IS TO THE EXTENT THAT THE FOOTAGE SHOWS --

17   AND, AGAIN, I DON'T KNOW WHAT NBC FILMED AND WHAT IT DIDN'T --

18   WHETHER THERE'S AN ACCESS TO DETERMINE THAT WITHOUT REVIEWING

19   THREE DAYS OF FOOTAGE FROM DIFFERENT CAMERAS AND HOW THAT

20   FOOTAGE IS MAINTAINED.

21        BUT IT STRUCK ME THAT IN THE END THERE ARE KIND OF

22   TWO KINDS OF DATA POINTS THAT MIGHT BE CAPTURED BY THE FOOTAGE.

23   ONE IS INFORMATION ABOUT -- ONE IS INFORMATION ABOUT OTHER

24   PEOPLE THAT DOESN'T SHOW ANY POLICE OR MAY OR MAY NOT SHOW OTHER

25   POLICE.  AND ONE IS INFORMATION JUST SHOWS CONTACT WITH POLICE.
```

```
 1              THE RELEVANCE WOULD BE TO THAT, EVEN IF IT DOESN'T
 2   INVOLVE MR. TIWARI, TO THE EXTENT IT SHOWED NBC'S WAY OF
 3   ENGAGING WITH THE POLICE IN THE, YOU KNOW, "TO CATCH A PREDATOR"
 4   TV SERIES, IT MIGHT BE RELEVANT TO ESTABLISHING JOINT ACTION.
 5              AND BEING MINDFUL OF THE BURDENS ON NBC, IT SEEMS TO
 6   ME IN THIS AGE OF -- IT'S MUCH EASIER TO REPLICATE
 7   ELECTRONICALLY STORED INFORMATION.  THE REVIEW PROCESS IS
 8   ENORMOUS.  BUT IF IT'S CONFINED TO OPERATION PETALUMA, WHICH
 9   WOULD BE THE ONLY OPERATION, AND IF PLAINTIFF SHOWS --
10         MR. BURKE:  IT'S STILL HUNDREDS OF HOURS, YOUR HONOR.
11   I JUST WANT THAT TO BE CLEAR.
12         THE COURT:  NO, I UNDERSTAND.
13         MR. BURKE:  IT'S HUNDREDS OF HOURS OF FOOTAGE.
14         THE COURT:  I UNDERSTAND THAT.  BUT SO, FOR EXAMPLE,
15   IN SOME DISCOVER ORDERS YOU COULD FASHION A PROTECTIVE ORDER
16   THAT WOULD REQUIRE PLAINTIFFS TO IDENTIFY INFORMATION THAT THEY
17   THOUGHT WAS RELEVANT THAT THEY PLANNED TO USE TO BASICALLY
18   SEGREGATE THAT OUT, DO THE EQUIVALENT OF RETURNING THE BALANCE.
19   AND THEN, YOU KNOW, WITHOUT -- AND THEN, AT THAT POINT PEOPLE
20   ARGUE ABOUT ITS ADMISSIBILITY.
21         MS. PRITZKER:  YOUR HONOR, WE'VE DONE THAT EXACT SAME
22   THING.
23         THE COURT:  AND THAT RELIEVES THE BURDEN ON NBC.
24   IT'S ALL DONE PURSUANT TO A PROTECTIVE ORDER. I GET THAT -- BUT
25   TO THE EXTENT THAT IT LITERALLY IS FOOTAGE OF ONLY THE -- AND
```

1    YOUR RIGHTS WOULD BE BUILT INTO THE PROTECTIVE ORDER TO MEAN

2    THAT -- YOU KNOW, WE CALL IT:  YOU CAN'T DO ANYTHING WITNESS

3    UNLESS YOU COME BACK TO THE COURT AND GET PERMISSION TO DO SO

4    KIND OF ARGUMENT.

5             IT'S THE EQUIVALENT OF MAKING PLAINTIFFS REVIEW IT.

6    AND THAT, OF COURSE, AGAIN, I'M MINDFUL OF THE SHOEN STANDARD

7    AND AT LEAST THE REQUIREMENT THAT PLAINTIFFS ARE SUPPOSED TO

8    EXHAUST THEIR BURDENS.  AND I DON'T KNOW WHETHER THE CITY OR

9    WHETHER THE PETALUMA POLICE, FOR EXAMPLE, WOULD HAVE CAPTURED

10   THE EQUIVALENT FOOTAGE.  I DOUBT IT.

11            SO THAT WOULD BE THE MECHANISM I WOULD SUGGEST TO YOU

12   GUYS TO RESERVE YOUR RIGHTS AND RELIEVE THE BURDEN ON NBC.  AND

13   THEN THE BURDEN WOULD BE WHAT'S BEEN IDENTIFIED.  AND WHAT WOULD

14   BE IDENTIFIED COULD BE REVIEWED WITH THE CASE MANAGEMENT

15   ASSISTANCE OF ME BEFORE NBC WOULD HAVE TO DO ANYTHING ABOUT IT.

16            AND, AGAIN, I WANT TO EMPHASIZE THAT IN THE END A LOT

17   OF THIS FOOTAGE IS GOING TO BE WHAT WE CALL "WEAK EVIDENCE" WHEN

18   YOU'RE TRYING A CASE.  YOU ARE GOING TO NEED STRONG EVIDENCE OF

19   JOINT ACTION, OR IT'S NOT GOING TO WORK.

20            **MS. PRITZKER:**  IT MAY, IN FACT, BE THE ONLY EVIDENCE

21   WE HAVE.

22            **THE COURT:**  BUT I'M JUST SAYING -- I'M NOT SAYING

23   IT'S WEAK.  I'M JUST SAYING MOST OF IT WILL BE WEAK.

24            **MS. PRITZKER:**  I UNDERSTAND THAT.  JUDGE BEELER, I

25   JUST WANT TO SAY I APPRECIATE YOUR WAY OF CUTTING THROUGH THIS,

```
1    AND I THINK THAT YOUR SUGGESTION IS A GOOD ONE. WE DID THIS

2    EXACT SAME EXERCISE IN AN ANTITRUST CASE THAT I'M INVOLVED WITH

3    IN FRONT OF JUDGE RHYU; ALLOWED US DISCOVERY INTO A PARALLEL --

4              THE COURT:  RIGHT.

5              MS. PRITZKER:  -- ANTITRUST PROCEEDING INVOLVING THE

6    SAME DEFENDANT.  AND SHE DID EXACTLY WHAT YOU'RE DOING.  SHE

7    SAID:

8              "TURN THE MATERIALS OVER TO PLAINTIFFS PURSUANT

9              TO A PROTECTIVE ORDER AND HAVE THE PLAINTIFFS

10             IDENTIFY WHAT THEY WOULD CONSIDER TO BE RELEVANT,

11             PROBATIVE EVIDENCE ON THEIR ISSUES."

12             AND THE PARTIES WORKED THROUGH THAT PROCESS, SO --

13             THE COURT:  AND DID --

14             MS. PRITZKER:  -- I UNDERSTAND THAT, AND IT HAS

15   WORKED WELL IN OTHER CASES.

16             THE COURT:  AND THEN, JUST MOVING TO SORT OF TOUCH

17   BASE ON THE KIND OF POLICIES AND PRACTICES.  I MEAN, LOOK, I

18   DON'T KNOW WHAT THE POLICIES AND PRACTICES ARE. IT SEEMED TO ME,

19   AGAIN, THE POLICIES AND PRACTICES HAVE GOT TO BE -- I DIDN'T

20   UNDERSTAND. I THOUGHT THAT WE NEED TO BE CAREFUL.  THE

21   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS DON'T EXIST

22   ANYMORE.

23             THE POLICIES AND PRACTICES AS TO THE PROGRAM'S

24   FAIRNESS, ACCURACY OR COMPLIANCE WITH NBC NEWS POLICIES,

25   WHATEVER CONSTITUTIONAL CLAIMS ARE AT PLAY HAVE TO BE HOOKED TO
```

```
 1   WHAT THE POLICE DID AND WHAT THE -- AND WHAT THEN NBC'S DATELINE

 2   PROGRAM DID WITH THE POLICE, OR IT'S NOT GOING TO BE RELEVANT TO

 3   THE SECTION 1983 CLAIMS WITH THE POSSIBLE ADDITION OF THAT BEING

 4   THAT THERE IS THE CASE LAW IN THE NINTH CIRCUIT THAT TALKS ABOUT

 5   WHEN THE CONDUCT IS EVIL.  I MEAN, THAT'S A TERRIBLE WAY OF

 6   SAYING IT.  THEY SAY "EVIL MOTIVE," BUT I THINK OF IT AS

 7   MALICIOUS AND SADISTIC FOR THE VERY PURPOSE OF CAUSING HARM,

 8   THAT'S THE EIGHTH AMENDMENT STANDARD.  THEN, THERE MIGHT BE

 9   RELEVANT INFORMATION.

10           BUT IT SEEMS TO ME THAT, YOU KNOW, I CAN'T TELL

11   WHAT -- I CAN'T TELL WHAT THE INFORMATION AT PLAY THERE WOULD BE

12   IN THE POLICIES AND PROCEDURES.  AND SO THEN I WOULD RELY ON

13   COUNSEL, DEFENSE COUNSEL, TO IDENTIFY SORT OF THE UNIVERSE OF

14   INFORMATION THAT MIGHT BE APPROPRIATE.

15           IF YOU -- YOU KNOW, I JUST -- YOU'RE NOT MAKING THE

16   SAME -- SO THAT'S THE ARGUMENT. I JUST CAN'T -- I CAN'T TELL

17   WHAT THAT WOULD BE.

18           AND I JUST WONDERED IF FROM YOUR PERSPECTIVE, MR.

19   BURKE, IF YOU HAVE ANY RESPONSE TO THAT.

20           MR. BURKE:  THERE'S NO POLICY. THERE'S NO WRITING

21   THAT I AM AWARE THAT IS REFLECTIVE OF ANY POLICY.

22           THE COURT:  ABOUT HOW THE NBC INTERACTED WITH THE

23   COPS?

24           MR. BURKE:  ABOUT THIS, YOU KNOW, ABOUT THIS

25   OPERATION IN PETALUMA THAT'S AN NBC-CREATED OR INVOLVED
```

1   MEMORANDUM OR POLICY.

2          **THE COURT:**  BUT HOW ABOUT FOR INTERACTION WITH POLICE

3   DEPARTMENTS, GENERALLY?  LIKE WHAT THE RULES OF ENGAGEMENT ARE,

4   YOU KNOW? LIKE IT WOULD BE THE EQUIVALENT OF A MEMO OF

5   UNDERSTANDING THAT AGENCIES WOULD HAVE WITH EACH OTHER.

6          **MR. BURKE:**  I MEAN, I --

7          **THE COURT:**  THAT WOULD BE THE ONLY RELEVANCE I CAN

8   SEE HERE.  AND THEN, I CAN SEE IF YOU WANTED TO IDENTIFY THAT,

9   AND THEN TELL ME IN CONTEXT WHY IT OUGHT NOT TO BE DISCOVERABLE,

10  I'D BE WILLING TO DO IT.

11         I JUST, KNOWING THAT THE NINTH CIRCUIT STANDARD IS

12  THAT -- I DON'T KNOW WHAT THE NEWS AND POLICIES WERE AND WHETHER

13  THERE WAS A NONCOMPLIANCE WITH THOSE POLICIES THAT MIGHT BE

14  RELEVANT TO EVIL INTENT.  IT STRIKES ME THAT POTENTIALLY THAT

15  INFORMATION COULD BE THERE.  BUT IT SEEMED LIKE THE INFORMATION

16  WAS SO MODEST AS TO BE -- I MEAN, I DON'T KNOW WHETHER IT EXISTS

17  OR NOT.

18         AND THEN, I WAS HAVING A TOUGHER TIME WITH THE

19  EMPLOYEE COMMENTS ON IT. ANYWAY, SO THAT'S -- AND YOU DIDN'T

20  MAKE A BURDEN ARGUMENT. IT WASN'T THE -- YOUR ARGUMENT WAS THAT

21  THE POLICIES -- THAT THE REQUESTS WERE PROPOUNDED WHEN THE

22  DEFAMATION AND INTENTIONAL INFLICTION OF EMOTIONAL CLAIMS WERE

23  STILL PENDING.

24         AND I THOUGHT THAT WAS A REALLY FAIR OBSERVATION,

25  BECAUSE I DID THINK THAT PLAINTIFFS -- THE LANGUAGE OF THE

1    LETTER READ IN THOSE TERMS, BUT AT THE SAME TIME THERE IS THAT

2    LINE OF CASES THAT TALKS ABOUT HOW PUNITIVE DAMAGES COULD BE

3    AWARDED.  SO IT SEEMED LIKE THERE MIGHT BE A POSSIBILITY THAT

4    THAT INFORMATION -- THAT IT SEEMED THAT THAT INFORMATION COULD

5    BE DISCOVERABLE.  I'M JUST NOT SURE IT EXISTS.

6              **MS. PRITZKER:**  YOUR HONOR, THIS IS ELIZABETH

7    PRITZKER.  MAY I BE HEARD ON THESE ISSUES?

8              **THE COURT:**  SURE.

9              **MS. PRITZKER:**  FIRST, WITH RESPECT TO THE NEWS

10   POLICIES AND PROCEDURES, THEY ARE RELEVANT TO MR. TIWARI'S

11   CLAIMS IN A NUMBER OF RESPECTS.  FIRST OF ALL, HE DOES HAVE A

12   SUBSTANTIVE DUE PROCESS CLAIM.

13             **THE COURT:**  BUT IT'S A SUBSTANTIVE DUE PROCESS CLAIM

14   BASED ON HIS RIGHT TO BE FREE FROM PRETRIAL PUNISHMENT.

15             **MR. BURKE:**  CORRECT.

16             **MS. PRITZKER:**  THAT'S CORRECT. AND THE FAIRNESS AND

17   ACCURACY OF WHATEVER GUIDELINES NBC --

18             **THE COURT:**  NO, I DON'T SEE THAT. I SEE THAT WHAT THE

19   POLICE DID TO HIM. THAT'S THE PREDICATE FOR HIS SUBSTANTIVE DUE

20   PROCESS CLAIM.  NBC'S INVOLVEMENT IS RELEVANT FOR JOINT ACTION.

21   SO TO CONVEY LIABILITY ON THEM AND ON TOP OF THAT FOR PUNITIVE

22   DAMAGES, THAT'S THE PRISM THROUGH WHICH THE DISCOVERY HAS GOT TO

23   BE PROBLEM SOLVED.

24             **MS. PRITZKER:**  THAT'S ALSO TRUE. THE OTHER -- THE

25   OTHER TWO POINTS HERE IS THAT THEY SAID IN THE LETTER -- AND

1   IT'S AS CLEAR FROM THE DISCOVERY I DO HAVE -- THE FOLKS WHO WERE

2   ON THE SET FROM NBC WERE REQUIRED TO COMPLY OR TO COMPORT THEIR

3   BEHAVIOR WITH RESPECT TO -- IN CONJUNCTION WITH THESE POLICIES

4   AND PROCEDURES.

5          BUT THE LIMITED PRODUCTION NOTES THAT WE HAVE

6   INDICATE THAT FOLKS ON SITE ARE SUPPOSED TO FOLLOW THESE

7   PROCEDURES.

8          THE OTHER ISSUE HERE IS THAT YOU MENTIONED A SUMMARY

9   JUDGMENT MOTION.

10          **THE COURT:**  I'M JUST SAYING THAT THAT'S HOW YOU COULD

11   AVOID SOME OF THE DISCOVERY.

12          **MS. PRITZKER:**  NBC HAS A NUMBER OF FIRST AMENDMENT

13   DEFENSES HERE WHICH IS BASED ON THEIR, I GUESS, YOU KNOW, NEWS

14   REPORTING DEFENSE. AND SO ALL OF THESE COME INTO PLAY HERE.

15          **THE COURT:**  I UNDERSTAND THAT.  I'M JUST SAYING NBC

16   COULD EMPLOY A STRATEGIC SUMMARY JUDGMENT MOTION THAT WOULD NOT

17   DEAL WITH ANY OF THEIR FIRST AMENDMENT ISSUES AND ATTACK IT ONLY

18   ON THE BASIS OF THE CONSTITUTIONAL VIOLATIONS, LEAVING ASIDE

19   DEFENSES TO BASICALLY SAY:

20              "WE DON'T HAVE TO GIVE DISCOVERY ON ALL OF THESE

21              THINGS WHICH ARE ONLY RELEVANT TO JOINT ACTION,

22              BECAUSE YOU LOSE BASED ON WHAT THE POLICE DID TO

23              YOU."

24          **MS. PRITZKER:**  THEY ALSO HAVE OTHER FIRST AMENDMENT

25   DEFENSES.

1        **THE COURT:**  THAT'S A DEFENSE.  AND A DEFENSE REQUIRES

2   THERE TO BE AN ACTION IN THE FIRST PLACE THAT'S

3   CONSTITUTIONALLY --

4        **MS. PRITZKER:**  RIGHT.

5        **THE COURT:**  -- RECOGNIZED.  YOU KNOW, THAT'S

6   RECOGNIZED UNDER THE CONSTITUTION. I'M NOT SAYING THEY DO.  I

7   JUST NOTED THAT.

8        **MS. PRITZKER:**  I UNDERSTAND THAT. SO I GUESS

9   RELEVANCE, I JUST THINK THE RELEVANCE OF THESE POLICIES AND

10  PROCEDURES IS JUST SOMEWHAT BROADER THAN YOUR HONOR HAS FRAMED

11  IT.

12       **THE COURT:**  OKAY.  SO, NO, I DON'T -- I'M NOT SAYING

13  THEY ARE NOT RELEVANT. I'M SAYING THAT IF YOU DON'T HAVE -- IF

14  YOU DON'T HAVE VIABLE CLAIMS AGAINST THE POLICE OFFICERS YOU

15  DON'T HAVE CLAIMS AGAINST NBC.  THAT'S ALL I'M SAYING.

16       **MS. PRITZKER:**  ABSOLUTELY RIGHT.

17       **MR. BURKE:**  CORRECT.

18       **THE COURT:**  SO THAT'S THE ONLY THING I WAS SAYING.

19  SO, I MEAN, I UNDERSTAND THE ARGUMENTS.  I MEAN, YOU HEAR WHAT

20  I'M SAYING ABOUT WHAT I THINK OUGHT TO BE DONE ON THE FOOTAGE.

21       I -- AS TO THE POLICIES, I GUESS I WOULD THINK THAT

22  TO THE EXTENT THERE'S A POLICY THAT TALKS ABOUT THE RULES OF

23  ENGAGEMENT WITH POLICE OFFICERS, I THINK THAT'S RELEVANT TO THE

24  JOINT ACTION ISSUE, BECAUSE IT'S EVIDENCE.  AND THEN, I THINK

25  THAT THEN AFTER THAT, ONLY AFTER THAT CAN WE ASSESS WHAT THE

1  RELEVANCE IS OF ANY EMPLOYEE COMMENTS ABOUT THINGS.

2          SO IS THAT KIND OF -- SO IT'S KIND OF -- I THINK IT

3  ENDS UP FEELING PREMATURE TO GET INTO WHAT PEOPLE SAY ABOUT IT

4  UNTIL WE KNOW WHAT THE POLICIES AND PROCEDURES ARE ABOUT --

5  FORMAL OR INFORMAL ABOUT THE RULES OF ENGAGEMENT WITH THE

6  POLICE.  BECAUSE THAT'S FIRST STEP FIGURING OUT WHETHER NBC IS

7  RESPONSIBLE, BECAUSE IT ENGAGED IN ESSENTIALLY JOINT ACTION WITH

8  A STATE ACTOR.

9          **MS. PRITZKER:**  WELL, AGAIN, I DON'T KNOW WHAT THEY

10  SAY. I MEAN, THERE'S SOME -- WE THINK THAT THERE ARE SOME

11  POLICIES AND PROCEDURES THAT DICTATE THE EXTENT TO WHICH NBC

12  SHOULD BE INVOLVED IN STAGING OR SENSATIONALIZING EVENTS, EITHER

13  WITH OR WITHOUT POLICE.  I DON'T KNOW WHAT THE POLICIES SAY,

14  WHICH IS WHY WE WANT THEM AND --

15          **MR. BURKE:**  YOU PROBABLY WANT THEM FOR OTHER REASONS

16  BUT --

17          **THE COURT:**  BUT, YEAH. ANYWAY, AND THEN, I MEAN THAT

18  JUST SEEMS TO ME --

19          **MS. PRITZKER:**  BUT TO ME THIS SEEMS LIKE THE THING

20  THAT NBC COULD TURN OVER QUITE EASILY.

21          **THE COURT:**  WHO ARE YOU DEPOSING FROM NBC'S

22  PERSPECTIVE?

23          **MS. PRITZKER:**  WE ARE DEPOSING A PRODUCER, LYNN

24  KELLER, WHO WAS THERE ON THE PROGRAM, AND CHRIS HANSEN.

25          **THE COURT:**  OKAY. GREAT. OKAY. WELL, ALL RIGHT. SO

```
 1   THANK YOU. THIS IS HELPFUL.

 2              MR. BURKE:  YOUR HONOR, WHERE DO WE GO FROM HERE?  I

 3   WOULD CERTAINLY LIKE TO TALK WITH MY CLIENT ABOUT BOTH OF THESE

 4   ISSUES.

 5              THE COURT:  WELL, THE PROBLEM IS I WAS TRYING TO GET

 6   YOU INFORMATION BEFORE YOUR ADR CONFERENCE.  I'M BACK IN TWO

 7   WEEKS.  DO YOU WANT TO -- I MEAN, I CAN ISSUE AN ORDER NOW, OR I

 8   CAN TALK WITH YOU ON MAY 18TH WHEN I'M BACK, AND YOU GUYS CAN

 9   TOUCH BASE WITH ME AGAIN ABOUT --

10              MR. BURKE:  WELL, YOUR HONOR, I REALLY WOULD NOT LIKE

11   THE COURT TO ISSUE AN ORDER.  IF WE CAN FIGURE OUT SOME

12   SOLUTIONS TO THIS BASED ON INPUT WITH MY CLIENT, I WOULD WELCOME

13   THAT.  OTHERWISE, I WOULD LIKE THE OPPORTUNITY TO BRIEF IT, IF

14   THE COURT IS GOING TO ISSUE AN ORDER.

15              THE COURT:  MY SUGGESTION IS THAT I WOULD ISSUE

16   BASICALLY A SUGGESTION FOR HOW THE PARTIES MIGHT PROCEED FROM A

17   CASE MANAGEMENT, BASED ON WHAT I'VE SAID HERE.  I THINK THAT I'M

18   SAYING WHAT I THINK YOU HAVE THE RIGHT TO FROM PLAINTIFF'S

19   PERSPECTIVE AND WHAT I THINK YOU OUGHT TO GET AND OUTLINING OF

20   THIS PROCEDURE WITH A PROTECTIVE ORDER THAT WOULD RETAIN THE

21   RIGHTS.

22              I'D KICK IT OUT IN AN ORDER, WHICH WOULD BASICALLY

23   SAY:

24                   "LOOK, THIS IS WHAT I THINK.  IF YOU LIKE THIS,

25              GREAT.  IF YOU DON'T, LET'S TALK MORE ABOUT IT, AND
```

```
1              THEN TALK ABOUT OUR NEXT STEPS FROM A BRIEFING

2              PERSPECTIVE ABOUT WHAT YOU DISAGREE WITH AND WHAT YOU

3              DON'T."

4              HOW DOES THAT SOUND?

5              MR. BURKE:  I GUESS I LIKE EVERYTHING ABOUT THAT

6    OTHER THAN THE CONCEPT THAT THAT COMES OUT IN AN ORDER AS

7    OPPOSED TO --

8              THE COURT:  WELL, IT'S NOT AN ORDER --

9              MR. BURKE:  -- THE MINUTES.

10             THE COURT:  I THINK -- SORRY.  I JUST INTERRUPTED

11   YOU, FOR THE REPORTER.  SORRY FOR THE COURT REPORTER.

12             IT'S NOT AN ORDER FOR YOU TO DO ANYTHING.  IT'S

13   BASICALLY A PROPOSED PLAN.

14             MR. BURKE:  I UNDERSTAND.

15             THE COURT:  IT WOULD BE SAYING WHAT I THOUGHT

16   PLAINTIFFS WERE ENTITLED TO.  SO IT WOULD ESSENTIALLY SAY

17   EVERYTHING I SAID HERE.

18             AND I SUPPOSE IT WOULD BE DIRECTING YOU TO MEET AND

19   CONFER, TALK WITH YOUR CLIENT, AND THEN SETTING A FURTHER DATE

20   TO TALK ABOUT IT.

21             MS. PRITZKER:  FINE WITH ME, YOUR HONOR.

22             MR. BURKE:  THAT'S FINE.

23             THE COURT:  AND THEN, I THINK, LOOK, THERE'S A

24   PRACTICAL -- YOU KNOW, LIKE EVERYTHING IN DISCOVERY AT THE END

25   OF THE DAY RIGHT NOW I SEE THE DIFFERENCE WITH SOME OF THOSE
```

1    CASES IS -- AND I UNDERSTAND THAT THERE'S ONE CASE, THE CENTRAL

2    DISTRICT OR EASTERN DISTRICT THAT APPLIED IT, THE SHOEN

3    STANDARD,  TO A MEDIA DEFENDANT WITHOUT A LOT OF DISCUSSION

4    ABOUT IT.

5              BUT IN THE END A MEDIA DEFENDANT WHO IS ACCUSED OF

6    JOINT ACTION WITH THE POLICE IS IN A SLIGHTLY DIFFERENT

7    PERSPECTIVE, EVEN AS I'M MINDFUL OF THE PLAINTIFF'S REAL

8    OBLIGATION UNDER THE CASE LAW TO EXHAUST THEIR MEANINGFUL

9    ALTERNATIVES.  BUT IT SEEMS TO ME THAT ONCE THEY DO THAT,

10   THERE'S AT LEAST A -- YOU KNOW, POTENTIALLY A RIGHT TO -- I DO

11   THINK THE INFORMATION IS RELEVANT.  I TOLD YOU THAT.

12             AND WHAT I'M PROPOSING IS A PROCESS THAT MAYBE SPARES

13   NBC THE BURDENS OF ACCESSING THE INFORMATION IN A WAY THAT

14   PROTECTS ALL THE INTERESTS THAT NBC ARTICULATED.  BUT RATHER

15   THAN ORDERING IT, I'LL PUT IT OUT AS A PROPOSAL.

16             AND THEN, WHAT I WILL DO IS I'LL FIGURE OUT WHETHER

17   WE JUST HAVE A SORT OF AN INFORMAL TOUCH BASE ABOUT IT, OR I'LL

18   SUGGEST SOMETHING.  BUT IF IT DOESN'T WORK FROM A TIMING

19   PERSPECTIVE, ALL YOU HAVE TO DO IS CONTACT MS. SCOTT AND WORK

20   OUT SOMETHING THAT WORKS FOR YOU.

21             **MS. PRITZKER:**  ALL RIGHT, YOUR HONOR.  WHEN ARE YOU

22   BACK?

23             **THE COURT:**  WHAT'S THAT?

24             **MS. PRITZKER:**  WHEN ARE YOU BACK?

25             **THE COURT:**  TWO WEEKS.

1        **MS. PRITZKER:**  OKAY.

2        **THE COURT:**  AND THAT'S BEFORE YOUR SETTLEMENT. I

3   MEAN, I THINK THE KEY THING IS MR. BURKE OFFERED IT.  WHATEVER

4   MR. TIWARI -- TALK WITH EACH OTHER ABOUT THE UNEDITED FOOTAGE.

5   MAKE SURE ANY FOOTAGE THAT INVOLVES HIM, MR. BURKE SAID HE

6   AGREES HE HAS IT ALREADY.  IF HE DOESN'T, HE'S HAPPY TO

7   FACILITATE.

8        **MR. BURKE:**  WELL, I THINK THAT THE ISSUE, JUST TO BE

9   CLEAR ON THAT -- AND, ELIZABETH, WE SHOULD TALK ABOUT THAT.  I

10  BELIEVE YOU ALREADY HAVE THAT, BUT I THINK THE ISSUE IS THAT HER

11  CLIENT BELIEVES -- THE PLAINTIFF BELIEVES THAT THERE'S

12  ADDITIONAL FOOTAGE OF HIM THAT WE HAVE THAT WE HAVE NOT

13  PRODUCED.  AND THAT'S -- I OBVIOUSLY CAN'T GET, YOU KNOW, BLOOD

14  OUT OF A TURNIP.

15       **THE COURT:**  NO.  THAT'S FINE.  AND WE'LL JUST SAY OF

16  COURSE I ALWAYS ACCEPT COUNSEL'S REPRESENTATION ABOUT WHAT THE

17  EVIDENCE IS AND ISN'T.  SO THAT KIND OF PUTS THAT ISSUE TO REST

18  AS FAR AS I'M CONCERNED.

19       **MR. BURKE:**  OKAY.

20       **THE COURT:**  OKAY?  I MEAN, IF YOU DON'T HAVE IT,

21  OBVIOUSLY, BECAUSE IT'S BEEN LOST OR IT DIDN'T GET TURNED OVER

22  FROM THE CRIMINAL CASE TO THE CIVIL, THAT'S DIFFERENT.

23       BUT IF THE ISSUE IS IF THERE'S MORE, MR. BURKE HAS

24  SAID THAT THERE ISN'T, AND THAT ENDS IT.

25       **MS. PRITZKER:**  WELL, I THINK THAT IT MAY BE SOMEWHAT

```
 1   MORE COMPLICATED THAN THAT.

 2              THE COURT:  WELL, YOU GUYS TALK ABOUT IT.

 3              MR. BURKE:  WE WILL.

 4              MS. PRITZKER:  WE'LL TALK ABOUT IT.

 5              THE COURT:  THE ISSUE IS NOT ACCESS.  MR. BURKE SAYS

 6   THAT IF IT SHOWS HIM, NO PROBLEMO.

 7              SO YOU GUYS FIGURE THAT PART OUT OF IT, AND LET ME

 8   KNOW IF THERE'S A PROBLEM.

 9              ANYWAY, THANK YOU SO MUCH FOR TALKING TO ME TODAY.

10   AND I'LL LOOK FORWARD TO SEEING IF WE CAN COME TO A CASE

11   MANAGEMENT SOLUTION OF THIS THAT GETS PLAINTIFFS THE INFORMATION

12   THEY NEED TO MEANINGFULLY ASSESS THE CASE WITHOUT IMPOSING

13   ENORMOUS BURDENS ON NBC.

14              MS. PRITZKER:  FAIR ENOUGH.  THANK YOU, YOUR HONOR.

15              MR. BURKE:  THANK YOU, YOUR HONOR. ENJOY YOUR

16   VACATION.

17              THE COURT:  THANK YOU.  I WILL.  BYE.

18              (THEREUPON, THIS HEARING WAS CONCLUDED.)

19

20

21

22

23

24

25
```

KATHY WYATT, CSR, RMR (415) 487-9834

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

_____

/S/ KATHERINE WYATT